## PENN v. CHICAGO & N. W. RY. CO.
### No. 9253.

Circuit Court of Appeals, Seventh Circuit.

Nov. 6, 1947.

Rehearing Denied Dec. 3, 1947.

Drennan J. Slater, James B. O'Shaughnessy, and Lowell Hastings, all of Chicago, Ill., for appellant.

Royal W. Irwin, of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This appeal is from a judgment in plaintiff's favor, entered October 10, 1946, in a suit brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., based on an alleged violation of the Federal Safety Appliance Act, 45 U.S.C.A. § 2, which requires a railroad engaged in interstate commerce to equip its cars with couplers "which can be uncoupled without the necessity of men going between the ends of the cars."

The complaint, at the time the case went to the jury, contained the single charge that the defendant "carelessly, negligently and unlawfully equipped and maintained on said car a defective coupler in that the same could not be uncoupled by means of the pin lifter, contrary to the provisions of the Federal Safety Appliance Act."

Two grounds are urged for reversal, (1) that the court erroneously refused to direct a verdict in favor of the defendant, and (2) that the jury was improperly instructed.

In reviewing the action of the lower court in refusing to direct a verdict, we must, of course, consider the evidence in the light most favorable to the plaintiff's case. Here, the plaintiff was the sole occurrence witness offered in his behalf. The record contains no direct evidence of any defect in the coupler mechanism, and any defect which existed must be inferred from the circumstances as related by the plaintiff.

At the time of the accident resulting in plaintiff's injury, the defendant was engaged in classifying cars. Plaintiff was a brakeman and it was his duty to uncouple cars so that they might be shunted onto various tracks in the yard. The car to be uncoupled was equipped with the usual automatic coupler, operated by a rod about four and one-half feet long, with the outside end bent to form a handle. Shortly prior to the accident, plaintiff mounted the car next to the one to be uncoupled, standing on the stirrup. He states that while

thus positioned he made five or six unsuccessful attempts to operate the coupler. While the record does not disclose definitely where the plaintiff should have been positioned in order to operate the coupler, we think it is evident that he was not in a proper position while on the adjacent car. He testified that he placed himself on the car because it was hot and it became rather tiresome running fifteen or twenty feet every few minutes in order to pull pins. In a statement made previous to the trial and offered in evidence, he stated, "The pin lifter was about 3 and a half feet from where I hung on the ladder. This is further away than usual and I could not pull it because I did not have sufficient leverage stretched out as I was to pull out and up on the pin and hang on at the same time."

After having attempted unsuccessfully to operate the coupler from this awkward position, he stepped upon the ground and ran along beside the cars which were moving at a speed of from six to eight miles per hour. While thus running, he stated that he took three or four steps and during that time made three attempts (at a previous trial plaintiff stated two attempts) to lift the pin, that on the third the pin lifted, the coupler operated and the leading car was cut off and went on down the track as intended. At the time he succeeded in lifting the pin and uncoupling the car his foot went into a space between a switch rod and the switch ties at No. 35 switch stand. This space had a rod running down the middle between the two ties. It was the stepping in this space which resulted in the injuries complained of.

The plaintiff testified that the car at the time he boarded it was about fifty or sixty feet from No. 35 switch and that after he stepped on the ground he traveled three or four steps before reaching the switch. All of this happened while the train was traveling from six to eight miles per hour. It is thus obvious that only a few seconds at the most elapsed between the time he boarded the car and that of the accident, and only a second or two between the time he stepped on the ground and that of the accident.

We are of the view that this evidence was insufficient to take the case to the jury. Certainly it did not prove that the coupler was defective "in that the same could not be uncoupled by means of the pin lifter," as alleged in the complaint, for the reason that the pin was lifted and the cars uncoupled. The purpose of the statute upon which plaintiff's cause was predicated was to enable the employe to couple and uncouple cars without the necessity of going between the end of such cars. St. Louis & San Francisco R. Co. v. Conarty, 238 U.S. 243, 250, 35 S.Ct. 785, 59 L.Ed. 1290. There is no pretense, of course, in the instant case that the plaintiff received his injuries because he was required to or did go between the end of the cars. Plaintiff, however, contends that the fact that plaintiff made unsuccessful efforts to operate the coupler, even though he subsequently succeeded, is proof of its defective condition. None of the cases relied upon support such an extreme contention. At most they hold that proof of a failure to operate is sufficient to raise a jury question. In Chicago, Rock Island & Pacific Railway Co. v. Brown, 229 U.S. 317, at page 319, 33 S.Ct. 840, 57 L.Ed. 1204, such was the holding upon a factual situation stated by the court as follows:

"The uncoupling was to be done by means of shoving the cars in motion. Had the safety appliance been in order, this could have been accomplished by defendant in error while walking at the side of the train. But the safety appliance on the side of the car on which he was working at the time would not operate. He gave three or four jerks to it, which failed to open the coupler."

The facts further show that the plaintiff after failure to open the coupler undertook to lift the coupler pin with his hand, and while thus engaged received an injury.

In Chicago, M., St. P. & P. R. Co. v. Linehan, 8 Cir., 66 F.2d 373, the court held that a coupler which does not open after the application of force sufficient to open it if the coupler is in proper working condition does not meet the statutory requirements. There again, after plaintiff's failure to operate the coupler, he went between the cars for the purpose of adjusting the defective knuckle and while so engaged was injured. The court states, 66 F.2d at page 378:

"The question must be, Was there an earnest and honest endeavor to operate the coupler in an ordinary and reasonable manner, and was enough force applied to open the knuckle if the coupler was in proper condition? If under such circumstances the knuckle does not open and men are required to go between the cars to adjust the coupler and open the knuckle, the coupler does not meet the requirements of the act."

Atchison, T. & S. F. Ry. Co. v. Keddy, 9 Cir., 28 F.2d 952, is another case where the coupler would not operate and plaintiff was injured when he went between the cars for the purpose of adjusting the defective knuckle.

It is not necessary to refer to other cases where it has been held that the failure of a coupler to operate is proof of a defective condition. Such cases are of little or no benefit to the plaintiff in the instant case where the coupler did operate when sufficient force was applied and when plaintiff was positioned so that such force became effective. It is plain, so we think, that he was not in a proper position to operate the coupler while stationed on the side of the car. Plaintiff recognized this situation and placed himself on the ground for the purpose of performing the operation. Although he states that he made the third attempt before he succeeded, it is evident that the coupler operated within a second or two after plaintiff had thus positioned himself. Certainly the fact that it did not operate while he was awkwardly positioned on the car is no proof of defect, and we think the fact that it operated so readily after he was properly positioned dispels any inference of defect that might arise from his previous unsuccessful efforts.

In our view, there is no substantial evidence to sustain the verdict. The judgment appealed from is therefore reversed and the cause remanded, with directions to grant the defendant's motion for a judgment in its favor, notwithstanding the verdict.