**SEABOARD AIR LINE RAILROAD COMPANY, Appellant,**

v.

**Lucille E. CONNOR, Administrator of the Estate of Peter Woychak, deceased, Appellee.**

No. 7744.

United States Court of Appeals Fourth Circuit.

Argued Nov. 12, 1958.

Decided Dec. 2, 1958.

improper. For the reasons hereinafter set forth, we find no reversible error.

Lewis Thomas Booker and Eppa Hunton, IV, Richmond, Va. (Hunton, Williams, Gay, Moore & Powell, Richmond, Va., on the brief), for appellant.

Sidney L. Berz, Richmond, Va., for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and R. DORSEY WATKINS, District Judge.

R. DORSEY WATKINS, District Judge.

Lucille E. Connor, as Administrator [sic] of the Estate of Peter Woychak, (Appellee), brought suit under U.S.C. Title 45, sections 1 et seq., and sections 51 and 59, and the Boiler Inspection Act, against Seaboard Air Line Railroad Company (Appellant) to recover for the benefit of herself as widow, and for the benefit of the two infant daughters of Woychak, damages for fatal injuries received by Woychak while an employee of appellant; and also damages for the physical pain and suffering of Woychak for the seventeen days from his injury to his death. At the conclusion of the evidence the trial court directed a verdict for appellant on the count under the Boiler Inspection Act. The jury then returned a $65,000 verdict for the plaintiff of which it allocated $15,000 to the widow and $25,000 to each daughter, respectively nine and five years old at the time of Woychak's death.

Appellant filed a timely motion for judgment notwithstanding the verdict, or for a new trial. The motion was denied and this appeal followed.

Appellant seeks a reversal on the grounds (a) that there was no evidence from which the jury could have found any negligence on the part of appellant or any violation by it of the Safety Appliance Act; (b) that there was error in permitting certain hypothetical questions to be answered; and (c) the verdict was

## I.

Violation of Safety Appliance Act; Negligence.

The extremely limited scope of review in cases such as this has recently been summarized by this court in Atlantic Coast Line Railroad Company v. Boartfield, 4 Cir., 1958, 253 F.2d 733, 734–735, as follows:

"This is a F.E.L.A. case, and our inquiry goes only to the question of whether or not any fault of the railroad contributed, even in the slightest, to the injury. Kernan v. American Dredging Company, 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382; Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Webb v. Illinois Central Railroad Co., 352 U.S. 512, 77 S.Ct. 451, 1 L.Ed.2d 503; Ferguson v. Moore-McCormack Lines, Inc., 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511. See also Stinson v. Atlantic Coast Line Railroad Company, 355 U.S. 62, 78 S.Ct. 136, 2 L.Ed.2d 93; Smalls v. Atlantic Coast Line Railroad Company, 348 U.S. 946, 75 S. Ct. 439, 99 L.Ed. 740; Shaw v. Atlantic Coast Line Railroad Company, 353 U.S. 920, 77 S.Ct. 680, 1 L.Ed.2d 718; McBride v. Toledo Terminal R. Company, 354 U.S. 517, 77 S.Ct. 1398, 1 L.Ed.2d 1534; Ringhiser v. Chesapeake & Ohio Railway Company, 354 U.S. 901, 77 S.Ct. 1093, 1 L.Ed.2d 1268; McCracken v. Richmond, Fredericksburg & Potomac Railroad Company, 4 Cir., 240 F.2d 484; New York Central Railroad Company v. Carr, 4 Cir., 251 F.2d 433."

To this list might now be added Moore v. Terminal Railroad Association of St. Louis, 1958, 358 U.S. 31, 79 S.Ct. 2, 3 L.Ed.2d 24 and Watn v. Pennsylvania Railroad Company, 3 Cir., 1958, 255 F.2d 854.

There was testimony from which the jury might, with reason, have found that Woychak was employed by appellant as field brakeman in a train operation requiring the removal of a cut of cars from a track on which they had been standing over night to another track; that under the rules of appellant some brakes would normally have been set on the standing cut; that appellant's rules also cautioned that if a brake were not properly "dogged" is might spin as soon as a succeeding brakeman "starts the release and throw him from the brake platform;" that the switching movement began within seconds after the engine was coupled to the cut, at which time Woychak was on the ground on the west side of the cut of cars; that it was his duty to see that all cars were coupled, and to release handbrakes while the cars were in motion; that while the cars were in motion Woychak was seen to fall to the ground on the east side from in between two cars some seven or eight cars from the engine; that the only thing that would have caused Woychak to go upon the moving cars was to release a handbrake; that he sustained a fracture of the left arm above the elbow caused by a violent wringer-type injury, such as when the arm "is caught in rollers, mashed or twisted". From the foregoing we are not prepared to say that appellee's proofs do not justify with reason the conclusion that Woychak's presence on the moving cars was to release a set brake, and that such brake was defective, or had been defectively set, and that such defect caused or contributed to Woychak's fall.

The testimony as to events following Woychak's fall clearly would justify a jury verdict based upon appellant's negligence. The engineer saw Woychak hit the ground on the east side of the cars, but the engineer testified that as Woychak landed some three feet from the cars, the engineer assumed that Woychak was in a safe place, and merely lightly applied the independent brakes of the engine. When Woychak did not get up, the engineer sounded the emergency whistle and brought the engine to a stop in about one and one-half car lengths, but only after Woychak had reached a sitting posture and had been struck on the chest and side by a journal box of one of the cars. Other testimony indicated that Woychak was "rolling" when he landed; and that the cars could have been stopped in a much shorter space if the brakes were in proper condition, or if the engineer had not assumed that a brakeman, thrown or falling from moving cars, was in a safe position just because he was not between the cars.

Under ordinary concepts of negligence, the jury would have been fully justified in concluding that appellant's conduct after Woychak fell from the cars, whatever the reason for such fall, failed to meet the standard of due care.

At the hospital, Woychak was found to have, in addition to the fractured arm, a severely contused back, a fracture of the right shoulder blade and ninth and eleventh ribs on the right side, and eighth and ninth ribs on the left side. Whether his back was also fractured was not determined. He died of a pulmonary embolism resulting from his injuries. Any or all of these injuries could have been found to have resulted from negligence of appellant after Woychak's fall, whatever the origin of that fall. Under the circumstances the jury could with reason have concluded that employer negligence played some part, even if slight, in producing Woychak's injury and death; and that defective equipment was either responsible therefor or was a contributing factor.

## II.

### Hypothetical Questions.

Two hypothetical questions were asked of appellee's experts, which in substance were whether, assuming that movement of a cut of cars was begun without the handbrakes having been released, and that Woychak's duties required him to release the handbrakes after the movement began, that was a safe or hazardous practice. Appellant contends that the questions were improper in

that they assumed the two facts that handbrakes were on, and that Woychak's duties required him to release them while the cars were moving, but that the evidence did not fairly establish these facts. We have already held that under the rules applicable to F.E.L.A. cases, the jury could infer the existence of such facts. Therefore hypothetical questions assuming such facts were not improper. Moreover, the affirmative answers really stated no more than what the jury might well have concluded without any explicit testimony thereon; that it would be safer to release handbrakes on stationary cars than on moving cars.

### III.

### The Verdict.

The trial court correctly instructed the jury on the measure of damages in the death claim, and in the claim for conscious pain and suffering. It further instructed on the propriety of commuting awards on the death claim to present value. In addition, the court gave appellant at least as favorable an instruction as was permissible [1] when it told the jury that in considering the contributions the widow would probably have received from her husband they could take into "consideration the fact that she was now remarried."

Appellant attacks the allowance of equal amounts—$25,000—to each of the children, although there was a difference of four years in their ages. At the argument, it was agreed that the two children were in court during the trial. While the only affirmative testimony indicated that the health of the older child was better than that of the younger, we have no means of knowing what conclusion was reached by the jury as to the contributions each might have been ex-

pected during her minority to receive from her father, or what pecuniary amount was allowed each for loss of intellectual, moral and physical training by the parent.

■ Another completely satisfactory answer as to the total amount of the awards, as well as their allocation, is this: appellant did not request that issues be submitted to the jury as to the amount of damages allowed under the death claims, and the amount for conscious pain and suffering. Therefore, even if we could review separately these amounts,[2] we cannot say that their total is unreasonable as a matter of law. Therefore, whatever the rights of the widow and two children might be inter sese, the appellant is in no position to complain as to the allocation of the gross figure of $65,000.[3]

Affirmed.

---

**I.** No Virginia authorities, pro or con, were cited on this point. The weight of authority is that evidence of remarriage is inadmissible in mitigation of damages, which are to be determined as of the time of the employee's death. Annotation. 30 A.L.R. 121, 123: "Events between death and trial as bearing upon damages to beneficiary for wrongful death."

**2.** But see Neese v. Southern Railway Company, 1955, 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60.

**3.** Martin v. Swift, 3 Cir., 1958, 258 F.2d 797, 800.