John O. **FRITTS**

v.

**TOLEDO TERMINAL RAILROAD COMPANY.**

No. 14247.

United States Court of Appeals
Sixth Circuit.

July 27, 1961.

William C. Wines, Chicago, Ill. (Bruneau E. Heirich, Chicago, Ill., Ben Neidlinger, Toledo, Ohio, on the brief), for appellant.

Robert B. Gosline, Toledo, Ohio (Shumaker, Loop & Kendrick, Toledo, Ohio, on the brief), for appellee.

Before MILLER, Chief Judge, CECIL, Circuit Judge, and BOYD, District Judge.

BOYD, District Judge.

This case presents the question of the sufficiency of the evidence under the Federal Employers' Liability Act and the Federal Boiler Inspection Act (Title 45 U.S.C.A. § 51 et seq., and Title 45 U.S. C.A. § 23). The trial court's judgment sustaining the defendant-appellee's* motion for a directed verdict at the conclusion of the proof is here challenged.

The plaintiff, employed as a locomotive fireman by the defendant, claims personal injury growing out of a freak accident which occurred during a switching operation in defendant's yards at Toledo, Ohio. While his train was backing across switches at a speed between two and five miles per hour, he either fell or was thrown through the open window of the engine cab to the ground alongside the track. Immediately prior to plaintiff's fall he was seated on the left, or fireman's side of the engine taking signals from the brakeman on the caboose of the train ten cars away.

At the close of all the proof counsel for the plaintiff conceded the evidence to support certain claims of negligence was wholly lacking but insists on this appeal that there were other submissible issues for the jury with respect to the general charge, among others, that the defendant negligently failed to furnish the plaintiff with a reasonably safe place to work; specifically, that the defendant negligently failed to maintain its tracks, switches and frogs in a reasonably safe condition; also that the defendant negligently failed to repair defective conditions in its tracks, switches and frogs. Plaintiff contends too on this appeal that jury questions were made in the trial court with respect to inspection and use of the locomotive herein in violation of the Safety Appliance and Boiler Inspection Acts with particular reference to the alleged unsafe condition of the fireman's seat in the cab of the locomotive.

On our consideration of these matters and the trial judge's action thereon, the testimony and record below must be viewed in the light most favorable to the plaintiff of which it is reasonably susceptible and in the light of the liberal application given the within statutes by the Courts. Our inquiry goes to the question of whether or not any fault of the defendant railroad contributed, even in the slightest, to the plaintiff's alleged injury. Rogers v. Missouri Pacific R. R. Co., 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493; Lilly v. Grand Trunk Western R. R. Co., 1943, 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411; Atlantic Coast Line R. R. Co. v. Boartfield, 4 Cir., 1958, 253 F.2d 733. In other words the question for this court is whether there was a complete lack of probative facts with respect to the matters here under consideration. Lavender v. Kurn, 1946, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.

The evidence submitted in the trial court as to how the accident occurred is somewhat confusing. The plaintiff, who testified concerning the happening, was not at all consistent in his several versions of it, particularly with respect to the condition of the fire-

* The parties will hereafter be referred to as in the trial court.

man's seat in the cab of the engine. Other members of the train crew knew little or nothing of the occurrence. There is support in the record for the railroad's position that the plaintiff fell as a result of his throwing a fusee at a rabbit ambling along the right-of-way. But the contentions of the parties and inconsistencies in the proof are not for the trial judge to resolve but for the jury under proper instructions. It is still the function of the trial judge within narrowly prescribed limits of the statutes herein to pass upon the sufficiency of the evidence but it is not his prerogative to judge the credibility of the witnesses or the weight to be given their testimony. A jury trial is an integral part of the remedy afforded railroad workers under these statutes and to deprive them of a jury trial in a close or doubtful case takes away much of the relief the Congress intended to give them. Davis v. Virginian Ry. Co., 1960, 361 U.S. 354, 80 S.Ct. 387, 4 L.Ed.2d 366; Coray v. Southern Pacific Co., 1949, 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208; Lavender v. Kurn, supra, Tiller v. Atlantic Coast Line R. R. Co., 1943, 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610. The district judge, it seems to us, did invade the jury's province concerning the plaintiff's rights, as is evidenced by his statements at the conclusion of the trial. He reviewed the testimony of the plaintiff at the trial, statements made by him in pretrial depositions and interviews prior to the trial. His summary of these matters seems to relate to inconsistent positions of the plaintiff and the weighing by the trial judge of the evidence with respect to the movement of the seat box or metal frame which the plaintiff was on at the time of his alleged fall. For instance, among other things, he said:

"Let us go back for a moment, because the Court feels that he has listened to this case for two days and he has observed so much shifting on the part of the plaintiff on the question of the seat that he was himself confused up to the time he began an analysis of the actual testimony."

"The Court is also of the opinion that, so far as the violation of Sec. 23 is concerned, the plaintiff has not supported the contentions alleged in his complaint, to-wit: that the cushion was movable, and did not move, and therefore caused him to be thrown about and out of the engine cab window."

"For these reasons, the Court has ordered the direction of a verdict in favor of the defendant."

■ The Boiler Inspection Act imposes upon a carrier the absolute duty of inspection and maintenance of its locomotives and all parts and appurtenances in a safe and proper condition. Lilly v. Grand Trunk Western R. R. Co., supra.

The question under the Boiler Inspection Act was whether the fireman's seat with respect to its separate parts was in a safe condition on the occasion under investigation. In our opinion there is positive evidence in the record that the seat was not securely fastened to the floor of the engine cab. The issues on this were definitely for the jury. The trial judge's failure and refusal to submit the case to the jury under the Boiler Inspection Act was therefore reversible error.

■ Action of the trial judge concerning the charge that the plaintiff was not furnished a reasonably safe place to work appears at no place in the record. Not only do we think there was sufficient evidence for the jury as to this feature of the case and so rule we also think there was sufficient evidence for the jury on the specific charge that the defendant did not maintain its tracks, switches and frogs in a reasonably safe condition. There was evidence in this connection that the plaintiff experienced the sensation of a lurching of his engine which he, from experience, attributed to a worn frog. Though the trial judge ruled out the opinion thus expressed by the plaintiff the Supreme Court has permitted opinions of this nature to stand as evidence when they are given by experienced rail-

road men and are based on their preceptions at the time of an accident. Myers v. Reading Co., 1947, 331 U.S. 477, 67 S.Ct. 1334, 91 L.Ed. 1615; Penn v. Chicago & Northwestern R. R. Co., 335 U.S. 849, 69 S.Ct. 79, 93 L.Ed. 398, reversing 7 Cir., 163 F.2d 995. Yard Foreman Elieff testified the frog in question which had been in use for more than five years was removed and placed on the "partly worn" pile. To bolster the testimony of the plaintiff and yard foreman the plaintiff also proffered expert testimony of a pensioned engineer of forty years' experience to the effect that the lurch or lateral motion of an engine resulting from a worn frog could be of sufficient severity to unseat a fireman as in the circumstances of this case. The trial judge rejected this piece of expert testimony upon the defendant's general objection but we find he was not warranted in doing so. Qualified persons as experienced railroad employees may testify and express opinions on matters of this type. The courts in dealing with this question under the Federal Employers' Liability Act have been liberal in their views of the problem. Seaboard Air Line R. R. Co. v. Connor, 4 Cir., 1958, 261 F.2d 656. It is our conclusion that the evidence on the whole on this phase of the case with respect to the alleged worn frog was sufficient, should have been submitted to the jury and that the trial court committed reversible error in refusing to do so.

The case is reversed and remanded to the district court for a new trial.

CECIL, Circuit Judge (dissenting).

I would affirm the judgment of the District Court.

The trial judge did review the evidence for the benefit of the jury and explained why he was directing a verdict. This is commendable. His conclusion is unequivocal as to a total lack of evidence to support the plaintiff's case. He said: "So the Court concludes here, in accordance with the decisions, that in the first instance there is no direct evidence, no convincing proof, certainly no substantial proof, that Section 51 was violated by the railroad in the operation of its train in that it maintained a frog in an unsafe condition. *There is absolutely no proof of that upon the part of the plaintiff that could be relied upon but, on the contrary, there is the proof of the yard maintenance man, yard foreman, that it was in good condition.* (Emphasis added.)

"The Court is also of the opinion that, so far as the violation of Section 23 is concerned, the plaintiff has not supported the contentions alleged in his Complaint, to-wit, that the cushion was movable, and did move, and therefore caused him to be thrown about and out of the engine cab window."

I too am of the opinion that there is no evidence, upon which reasonable minds might differ, that there was any negligence on the part of the defendant, in the slightest degree, causing the injuries of the plaintiff.

The attempt to prove that the frog was defective completely failed. The only evidence on that subject is undisputed. It is that about six months after the accident it was taken up for the reason that the tracks and switch had to be moved because of the construction of an expressway. It was in good operating condition when taken up and was placed on a stock pile of partially worn frogs. It was subsequently used at another place. It had been in use at least five years. The plaintiff did not examine it, although there was ample opportunity for him to have done so before it was removed.

Mr. Louis J. Mang, a railroader for over forty years, could qualify as an expert and under certain conditions could give opinion evidence. However, in my judgment, the trial judge was right in rejecting his testimony under the circumstances of this case. In the hypothetical question, the "sudden jerk" of the engine was described as "violent." There is no evidence that it was violent. The plaintiff said: "It took a sudden lurch to the side." The engineer said that he did not feel any unusual movement or lurching of the locomotive. Raymond Pffaf, the only other person on the locomotive at the time of the accident, said there was

a lurch or jerk of the locomotive but that the motion of the locomotive was not unusual.

The question also included a statement "that the plaintiff's position was with his head and shoulders out of the window of the cab looking down the track with his arm on an arm rest on the side of the window of that engine cab." There is no evidence that his head and shoulders were out of the window. The plaintiff said: "I was sitting in the seat facing south, towards the rear of the train." * * * "I was leaning out of the window."

An examination of the questions asked disclose clearly that the assumed facts were insufficient to warrant the expression of an opinion by the witness. Any answer would have been pure speculation. There was no statement about a worn frog or to what extent it was worn.

Furthermore, there was no proffer as to what the witness would say in answer to the questions until after the trial judge had indicated he would direct a verdict. At this time counsel for the plaintiff made a proffer after the witness was long gone from the court room. Counsel for the defendant objected to this proffer in the absence of the witness. In a matter so highly controversial as this, it would have been proper to have the witness give his answer in the record, out of the hearing of the jury. No one knows what the answer of the witness would have been. In my opinion, the record is not in shape to raise this question on appeal.

The plaintiff stated his opinion as to the cause of the accident, as follows: "Well, from my previous experience, the frog in my opinion was the object of the accident. The frog was worn, causing the engine to take this lurching." There is no testimony that he had previous experience with worn frogs, that he had any basis of comparison as to the lurch of a locomotive crossing over a good frog or a partially worn one. His statement is a pure conclusion based on an unwarranted inference. The trial judge was right in striking this answer from the record.

I do not take the position that a plaintiff cannot give his opinion in testimony. Such an opinion must be a reasonable inference or opinion based on some competent evidence in the record.

The facts of this case do not fall within the ambit of Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.