## CHESAPEAKE & OHIO RY. CO. v. WELLS.
### No. 5648.

Circuit Court of Appeals, Sixth Circuit.
April 15, 1931.

Fred C. Rector, of Columbus, Ohio (Wilson & Rector, of Columbus, Ohio, on the brief), for appellant.

R. B. Newcomb, of Cleveland, Ohio (Skiles & Skiles, of Shelby, Ohio, Newcomb, Newcomb & Nord, of Cleveland, Ohio, and Pugh & Pugh, of Columbus, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Action by appellee, Wells, to recover damages of appellant, the Chesapeake & Ohio Railway Company, for personal injuries. The suit was brought under the federal Boiler Inspection Act § 2, as amended by Act June 7, 1924, § 2, 43 Stat. 659, U. S. Code, tit. 45, § 23 (45 USCA § 23).

The questions are, whether the court erred in (1) denying appellant's motion for a directed verdict; and in (2) instructing the jury to return a verdict for appellee.

On the night of Sept. 9, 1927, appellee was the engineer on engine No. 1100, pulling a freight train from Peru, Ind., to Chicago. The train left Peru at about 12:35, and ran about 18 miles in about 35 minutes, when the boiler of the locomotive exploded and injured appellee. It is undisputed that low water in the boiler was the cause of the explosion. At the close of the evidence the court instructed the jury to return a verdict in favor of appellee upon the conception that it was undisputed that the two injectors, one on each side of the engine, although operating at the time of the explosion, were not effectively feeding the water into the boiler, and that no other reasonable inference could therefore be drawn than that there was some defect in the feed or delivery pipes or other mechanism of the injectors. In addition to the testimony referred to by the court in the charge, there was evidence tending to show (1) that the water glass falsely indicated the level of the water in the boiler; (2) that the lowest of the three gauge cocks when turned emitted water when as a fact the water in the boiler was below the gauge cock; (3) that a "telltale" device attached to the injectors failed to warn the engineer that they were not functioning; and (4) the theory is advanced that the boiler was "dirty," which condition caused the water to foam and to indicate a supply in excess of the actual amount being used.

There is also evidence tending to show that prior to the accident it was frequently necessary to repair both injectors, and that, although the right injector was functioning properly at the beginning of the trip, yet, after the accident, it was found disabled and one of its valve stems was broken in such manner as to indicate that the major portion, at least four-fifths of the break, was old. It is conceded, however, that, as long as this valve stem or rod held together, the injector would function, but, when completely broken, the injector would no longer feed water into the boiler.

Viewing these circumstances in the light most favorable to appellee, we do not think that, when considered along with certain countervailing testimony, they require or compel a verdict in his favor. They were certainly sufficient to send the case to the jury over appellant's motion for a directed verdict (Baltimore & O. R. Co. v. Groeger, 266 U. S.

521, 527, 45 S. Ct. 169, 69 L. Ed. 419), but they were not sufficient as a matter of law to destroy appellant's defense. See Sweeney v. Erving, 228 U. S. 233, 240, 33 S. Ct. 416, 57 L. Ed. 815; Rose v. Transp. Co. (C. C.) 11 F. 438; Gill v. Brown, 130 Tenn. 174, 169 S. W. 752.

█ Liability does not arise upon proof only of a violation of the act. It must appear that the appellant's failure to obey the law was the proximate cause of appellee's injury. Lehigh Valley R. Co. v. Beltz, 10 F.(2d) 74, 77 (C. C. A. 2). Appellant's theory is that the explosion was not caused by any defective, unsafe, or improper condition of the boiler or any of its appurtenances, but that it happened because appellee allowed the water to become too low and neglected to start the injectors until it was too late. In support thereof there was testimony indicating that both injectors were effective at the beginning of the trip; that the engine would use only about 2,000 gallons of water per hour, and that, if one injector should become disabled the other was capable of delivering 6,000 gallons; that the purpose of two injectors was to forestall the contingency of one becoming disabled; that both injectors were inspected shortly after the accident; that the injectors, supply valves, and the feed lines were then wide open; that the left injector when attached to another engine operated perfectly; that the lower connection of the water glass, although somewhat limed, still had three-sixteenths of an inch unobstructed passage for the flow to and from the boiler; that the connection as originally made was three-eighths of an inch in diameter to allow for liming; and that the gauge cock pipes were absolutely clear. There is also evidence that the boiler was kept washed out in obedience to Federal Instruction Rules. There is evidence indicating that the "telltale" gave warning only when the injectors were open but not functioning. The injectors having been found open, the silence of the "telltale" indicated that they were feeding. In addition, appellant introduced evidence to the effect that both an examination and a chemical test demonstrated that the water in the boiler did not and could not foam. There was also evidence tending to show that the engineer should always have at least 5½ inches of water above the crown sheet, that is, the metal sheet forming the top of the fire box and the bottom of the boiler; that, if the water gets below the crown sheet, the engineer may discover it by looking at the water glass or turning the gauge cock; that the burned condition of the crown sheet revealed that before the explosion the water was 4½ inches below the crown sheet, and that under such circumstances the engineer should have stopped and drawn the fire. There is also testimony, which is contradicted, to the effect that the engineer upon a hearing before a board of inquiry touching the accident, accepted the responsibility therefor.

██ We think that the evidence in support of appellant's position was more than a scintilla, that it was substantial, and, if a jury should believe it, we cannot stay that it would not sustain a verdict in appellant's favor. Fair-minded jurymen might at least have divergent opinions as to the cause of the explosion. See Small Co. v. Lamborn & Co., 267 U. S. 248, 254, 45 S. Ct. 300, 69 L. Ed. 597; Payne v. Haubert, 277 F. 646, 650 (C. C. A. 6). We do not weigh the evidence or test the credibility of witnesses, but jurymen, to whom these functions belong, might reasonably infer that the explosion was not caused by any improper or unsafe condition of the "boiler, tender and all parts and appurtenances thereof," but that it occurred because the engineer allowed the water to get too low and turned on the injectors instead of stopping the train and drawing the fire. We think the jury should have been permitted, under appropriate instructions, to consider the evidence in the aggregate and to determine the issues according to its weight, keeping in mind that the burden of proof was upon appellee.

Reversed.