**Mary HEROLD, Plaintiff,**

v.

**BURLINGTON NORTHERN, INC., a corporation, Defendant and Third-Party Plaintiff,**

v.

**Mrs. Louis HAUBRICK, Third-Party Defendant.**

**No. 4–71 Civ. 219.**

United States District Court,
D. Minnesota,
Fourth Division.

April 17, 1972.

---

⸻◆⸻

Cloutier, White, Musech, Wright & Steele by John M. Steele, Minneapolis, Minn., for plaintiff.

H. K. Bradford, Jr., St. Paul, Minn., for defendant and third-party plaintiff.

Bergman, Knutson, Street & Ulmen by Howard A. Knutson, Minneapolis, Minn., for third-party defendant.

## ORDER DISMISSING COMPLAINT

NEVILLE, District Judge.

At the close of the plaintiff's case,[1] defendant moved for a dismissal of the complaint. The court hereby grants the motion. This is a classic textbook case of superseding or intervening cause; or stated another way, a case where reasonable minds cannot differ and could not find defendant negligent for lack of a foreseeable event.[2] Were the jury to do so, the court would be compelled to set such finding aside.

Cloutier, White, Musech, Wright & Steele, Minneapolis, Minnesota, by John M. Steele, Esq. appeared for plaintiff;

H. K. Bradford, Jr., Esq., St. Paul, Minnesota, appeared for defendant and third-party plaintiff; Bergman, Knutson, Street & Ulmen, Minneapolis, Minnesota, by Howard A. Knutson, Esq., appeared for third-party defendant.

The action is brought against defendant railroad under the Federal Employers' Liability Act for injuries suffered by the plaintiff from an alleged beating by another woman that occurred in defendant's Lyndale Avenue Yards parking lot on June 5, 1968 shortly after 3:00 P.M. as the plaintiff was getting into her automobile to go home after her work hours. Plaintiff contends that defendant was negligent in failing to meet its duty to provide her a safe place to work, and to render aid to her while in distress and unable to defend herself.[3]

Plaintiff now aged 44 originally was hired by the Burlington Northern Railroad's predecessor in 1957, as a key punch operator and was still working in that capacity on June 5, 1968. Plaintiff testified she hesitated to accept employment when first offered at the defendant's Washington Avenue Yards office because of its potentially dangerous location in a poorer part of town. She stated she commenced work only after receiving assurance that she would be protected, especially working the evening or night shift. Two years later the whole operation was moved. The Lyndale Yards office is the site where her present injuries arose and at which loca-

---

1. Plaintiff produced all of her evidence in the course of a two day trial claimed to bear on the question of liability and it was stipulated that defendant's motion for a dismissal could be made and ruled upon by the court prior to the presentation of what bode to be lengthy medical evidence as to plaintiff's injuries.

2. "If the defendant can foresee neither any danger of direct injury, nor any risk from an intervening cause, he simply is not negligent. . . . The virtually unanimous agreement that the liability must be limited to cover only those intervening causes which lie within the scope of the foreseeable risk, or have at least some reasonable connection with it, is based upon a recognition of the fact that the independent causes which may intervene to change the situation created by the defendant are infinite, and that as a practical matter responsibility simply cannot be carried to such lengths." Prosser, LAW OF TORTS, 4th Ed. at p. 281.

3. Defendant filed a third-party complaint againt the other woman Mrs. Louis Haubrick, alleging that if defendant has any liability the third party is liable over to defendant therefor. The third party defendant filed a counterclaim or cross claim against the plaintiff which her attorney states will be dismissed if plaintiff's complaint is. The third-party complaint and the counterclaim are not relevant to the crucial issue in this case, and will not be discussed further.

tion she had worked for some three or four months prior to the June 5, 1968 incident.

Approximately two years prior to the parking lot altercation, Mrs. Haubrick, the third-party defendant, openly accused the plaintiff of having an affair with or being unduly close to her husband Louis Haubrick, also an employee of defendant, serving in the capacity of yardmaster at the Lyndale Yards on June 5, 1968. She made this accusation in the presence of plaintiff's husband at their apartment. The critical point to be gleaned from this confrontation is that there was no attempt on the part of either woman physically to attack the other, nor were any threats made. Plaintiff admitted on the stand that from the time of the visit at her apartment until two years later at the fight in the parking lot, she had not seen Mrs. Haubrick, no threats were made, nor was there any indication of violence or reason to expect any harmful acts. She also stated she never in any way or at any time attempted to communicate to her employer fear of any possible attack.

Shortly after the meeting at plaintiff's apartment, one of the supervisors of defendant railroad called an informal meeting to discuss the apartment incident plus a reported phone call Mrs. Haubrick had made to another of defendant's female employees, one Joyce at her home to "keep away from Mr. Haubrick." At the meeting, plaintiff, Joyce and Mr. Haubrick were present and he was informed in effect that it was his responsibility to see that his wife did not bother women employees anymore.

On June 5, 1968 at about 2:55 P.M. Mrs. Haubrick drove to the Lyndale Yard office to deliver some Fresca (a soft drink) to her husband, the yardmaster. Mrs. Haubrick testified she did not know that the plaintiff also was working there. After the plaintiff's 3:00 P.M. shift terminated, she walked to her car accompanied by a male employee, who upon seeing and hearing a woman, later identified as Mrs. Hau-

brick, called the plaintiff by name, and thinking she was a friend got into his car and drove off. The fight commenced immediately thereafter.

■ The question presented is whether the defendant railroad failed to provide a safe place for its employees to work. Although she was then off duty the court will assume *arguendo* that at the time of the fight, an employment relationship still existed, and that the plaintiff was still engaged in interstate commerce even though she was then doing no act required in furtherance of the employer's business. Had the damage been caused by a defect in the parking lot itself, or even by other cars if there were a history of frequent accidents because of its design or condition, the situation might be different. Here, however, a completely independent intervening force caused the alleged damage. The court is not persuaded that the railroad, as an employer, should be held liable for an unforeseeable assault by a third person, when not provided with any notice or knowledge of the likelihood of such attack, and the working area was not conducive to any unusual risk of assault. St. Louis-San Francisco R. Co. v. Mills, 271 U.S. 344, 46 S.Ct. 520, 70 L.Ed. 979 (1926); United States v. Shively, 345 F.2d 294 (5th Cir. 1965); Murray v. Osenton, 126 So.2d 603 (Fla.App.1961); Ward v. Southern R. Co., 206 N.C. 530, 174 S.E. 443 (1934); Carter v. Atlantic Coast Line R. Co., 109 S.C. 119, 95 S.E. 357 (1918). See a collection of cases in a note in 9 ALR 3d 517, 522. The United States Supreme Court in Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1956), enunciated the law in an F.E.L. A. action in ascertaining *whether the evidence necessitated the submission of the case to the jury as follows:*

"Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages

are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence."

Applying the reasoning and standards set forth in above cases, this court holds the evidence is such that reasonable minds could not differ as to the result that the railroad was not negligent in failing to provide a safe place to work for its employee, and therefore grants a dismissal of plaintiff's complaint. Furthermore, the court holds that no reasonable minds could find there was a failure of duty to stop the fight. The testimony on the stand indicated that it could only have lasted but a brief time and persons inside the building could not have come out in time to stop the damage. One fellow employee then outside the building did come in between the fighters as soon as he could.

The cases of Lillie v. Thompson, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73 (1947); McCann v. Smith, 370 F.2d 323 (2d Cir. 1966); and Vandaveer v. Norfolk & Western R. Co., 78 Ill.App.2d 186, 222 N.E.2d 897 (1966) are clearly distinguishable from this case. The *Lillie* case for instance was one where a woman employee worked the 11:00 P.M. to 7:00 A.M. shift alone on the first floor of a small building located in remote railroad yards where hoboes and transients were known and could be expected to pass by. A duty on the employer's part properly could be said to exist to precaution against an attack on the plaintiff. Here, any purported promise, if made by defendant at time of commencement of plaintiff's employment related to the situation dealt with in *Lillie* when plaintiff was stationed at the Washington Avenue Yards, some 12 years earlier. Plaintiff was on June 5, 1968 working at a new, safe location during daylight hours and her problem in any event did not arise because of some hobo or transient. The court can-

not believe that plaintiff expected the railroad to assign her a guard at all times to protect against some unanticipated attack by a jealous woman who apparently was part of or the victim of some illicit marital triangle. In essence, what the plaintiff seems to be asking is that a police escort be thrown around the railroad yard. Such a request is clearly beyond the scope of the railroad's duty to employ reasonable safeguards commensurate with known and foreseeable dangers, and even had such been done, an employee's wife delivering something to her husband undoubtedly would not be stopped. There is no evidence that the Lyndale Yard had ever been troubled by transients, or persons prone to violence and crime, nor was the parking lot at the office near an area frequented by people of low moral character. Furthermore, although it was not a frequent nor necessarily an approved practice, some wives occasionally came to the office to bring their husbands refreshments or a forgotten lunch, or to pick them up after work and so it was not a completely unusual occurrence to see some non-employee wife in the parking lots.

Also, the court cannot find any prior violent propensity on the part of Mrs. Haubrick, or even if such existed, that the railroad had any notice thereof. The mere fact that two years earlier a railroad supervisor held a meeting for the expressed purpose of discussing the "eternal triangle", does not constitute notice to the railroad to the point where some two years later it must guard against possible violence by a non-employee third person with some jealous tendencies, who sought retribution because of an alleged illicit affair between plaintiff and her husband.

A line of cases has held that a railroad has no liability for injury done to an employee by another employee unless the railroad had notice of the latter's vicious propensities and yet continued his employment and took no precautionary measures.

See Roebuch v. Atchison, T. & S. F. Ry., 99 Kan. 544, 162 P. 1153; Atlantic Coast Line v. Southwell, 275 U.S. 64, 48 S.Ct. 25, 72 L.Ed. 157 (1927); Reeve v. No. Pacific Ry., 82 Wash. 268, 114 P. 63; 32 Am.Jur.2d § 24, p. 265. Conversely it would seem to follow as an *a fortiori* that if a railroad is not so liable unless it has notice, it can have no liability for actions of another employee's wife not herself an employee where it had no such notice.

■ The court is persuaded that if as a matter of semantics it can be said that defendant was negligent in the first instance, this suit then involves a clear case of superseding or intervening cause, or lack of proximate cause. In Kroeger v. Lee, 270 Minn. 75, 78, 132 N.W.2d 727, 729 (1965), the court outlined the following four mandatory elements for a cause to be classified as intervening:

".  .  . (1) Its harmful effects must have occurred after the original negligence; (2) it must not have been brought about by the original negligence; (3) it must actively work to bring about a result which would not otherwise have followed from the original negligence; and (4) it must not have been reasonably foreseeable by the original wrongdoer."

Also in Strobel v. Chicago, R. I. & P. R. Co., 255 Minn. 201, 208, 96 N.W.2d 195, 201, that court stated:

".  .  . Only when there might be a reasonable difference of opinion regarding the foreseeability of the intervening act should the question of intervening cause be submitted to the jury."

The court is persuaded that these tests are satisfied in the instant case. For all of the above reasons, the court holds that the evidence is such that reasonable minds could not differ as to the result, and dismisses plaintiff's complaint.

So ordered.