Willard GREEN, Plaintiff-Appellant,

v.

RIVER TERMINAL RAILWAY CO.,
Third Party Plaintiff-Appellee,

Jerald E. Dawson, Third
Party Defendant.

No. 84–3401.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1985.

Decided June 10, 1985.

Michael J. Occhionero, Beachwood, Ohio, Frank Van Bree, argued, Henslee, Monek & Henslee, Chicago, Ill., for plaintiff-appellant.

Jones, Day, Reavis & Pogue, George J. Moscarino, argued, Thomas Smiele, Thomas Repicky, Dale F. Pelsozy, Cleveland, Ohio, for third party plaintiff-appellee.

Before CONTIE and MILBURN, Circuit Judges, and BROWN, Senior Circuit Judge.

CONTIE, Circuit Judge.

Plaintiff Willard Green appeals the district court's entry of a directed verdict in favor of defendant River Terminal Railway Company (hereinafter RTR) after trial on Green's complaint pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, and the Locomotive Boiler Inspection Act, 45 U.S.C. §§ 22, 23. Concluding that the evidence supports the district court's order, we affirm.

### I.

The complaint in this case arises out of an incident on September 29, 1978, in which Green, a conductor for defendant RTR, was allegedly assaulted by a fellow employee, Jerald Dawson.[1] On May 15, 1980, Green filed a complaint against his former employer, RTR, pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 alleging that RTR was negligent in failing to provide a safe work place, in failing to provide adequate protection in the volatile environment created by the strike, and in failing to prevent and warn of the danger of assault from which Green eventually suffered. On February 13, 1984, the district court allowed Green to amend the complaint to allege that RTR violated the Locomotive Boiler Inspection Act, 45 U.S.C. §§ 22, 23, because, due to a non-functional radio on the engine, Green was required to call the yardmaster from the Harvard Avenue Yard Office where the assault took place. Trial was held March 27 through April 2, 1984, and on April 2, after both parties had presented evidence, the district court directed a verdict in favor of RTR. Judgment was entered on April 17 and Green appealed.

### II.

■ In light of the remedial purposes underlying the FELA, that Act is to be liberally construed in favor of the injured plaintiff. *Sowards v. Chesapeake & Ohio Railway Co.*, 580 F.2d 713, 714 (4th Cir. 1978); *Gowins v. Pennsylvania Railroad Co.*, 299 F.2d 431, 433 (6th Cir.), *cert. denied*, 371 U.S. 824, 83 S.Ct. 44, 9 L.Ed.2d 64 (1962). Further, the court's power to direct a verdict is restricted in light of those remedial purposes and the legislative desire to preserve the plaintiff's right to a jury trial. Accordingly, in *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), the Court stated:

> Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for

---

1. The district court opinion is reported at 585 F.Supp. 1019 (N.D.Ohio 1984). The district court's statement of the facts as portrayed in the testimony at trial is accurate and is incorporated herein. 585 F.Supp. at 1021–22. Additional facts are recounted only to the extent necessary to support our affirmance in this case. We note that the parties' principal difference is not with respect to the district court's recounting of the facts, but rather with the court's application of the directed verdict standard in the FELA context to those facts.

which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.

*Id.* at 506–07, 77 S.Ct. at 448–49 (footnotes omitted). In other words, the case is for the jury "whenever fair-minded men" could find liability on the evidence, *id.* at 508, 77 S.Ct. at 449, and should be taken from the jury only "where fair-minded jurors cannot honestly differ," *id.* at 510, 77 S.Ct. at 451. *See Ferguson v. Moore-McCormack Lines,* 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511 (1957); *Herdman v. Pennsylvania Railroad Co.,* 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508 (1957); *Webb v. Illinois Central Railroad Co.,* 352 U.S. 512, 516, 77 S.Ct. 451, 454, 1 L.Ed.2d 503 (1957); *Mendoza v. Southern Pacific Transportation Co.,* 733 F.2d 631, 632 (9th Cir.1984) ("only 'slight' or 'minimal' evidence is needed to raise a jury question"); *Clark v. Kentucky & Indiana Terminal Railroad,* 728 F.2d 307, 310 (6th Cir.1984); *Carlton v. M/G Transport Services, Inc.,* 698 F.2d 846, 847 (6th Cir.1983) (Jones Act); *Johannessen v. Gulf Trading & Transportation Co.,* 633 F.2d 653, 656 (2d Cir.1980); *Perkoski v. New York, Chicago and St. Louis Railroad Company,* 217 F.2d 642 (6th Cir.1954); *Keith v. Wheeling & L.E. Railway Co.,* 160 F.2d 654, 658 (6th Cir.), *cert. denied,* 332 U.S. 763, 68 S.Ct. 67, 92 L.Ed. 348 (1947). *See also Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946); *Tennant v. Peoria & Pekin Union Railway Co.,* 321 U.S. 29, 32–35, 64 S.Ct. 409, 411–413, 88 L.Ed. 520 (1944). *Compare Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 360 (5th Cir.1980) (Jones Act)

("a directed verdict is possible 'only when there is a *complete absence* of probative facts' supporting the nonmovant's position."); *Fritts v. Toledo Terminal Railroad Co.,* 293 F.2d 361, 362 (6th Cir.1961) ("the question for this court is whether there was a complete lack of probative facts").

This court has held that:

the contentions of the parties and inconsistencies in the proof are not for the trial judge to resolve but for the jury under proper instructions. [However,] [i]t is still the function of the trial judge within narrowly prescribed limits of the statutes herein to pass upon the sufficiency of the evidence....

*Fritts,* 293 F.2d at 363. For while "disbelief ... [in] testimony would not supply a want of proof," *Moore v. Chesapeake & Ohio Railway Co.,* 340 U.S. 573, 576, 71 S.Ct. 428, 430, 95 L.Ed. 547 (1951), "[s]peculation cannot supply the place of proof," *id.* at 578, 71 S.Ct. at 430. As in considering all motions for directed verdict, the evidence is viewed in the light most favorable to the nonmovant. *Mendoza,* 733 F.2d at 633; *Lambert v. Morania Oil Tanker Corp.,* 677 F.2d 245, 247 (2d Cir.1982) (Jones Act); *Cullinan v. Burlington Northern, Inc.,* 522 F.2d 1034, 1036 (9th Cir.1975); *Rodriguez v. Delray Connecting Railroad,* 473 F.2d 819, 820 (6th Cir. 1973).

Case law makes clear, however, that although the power to grant directed verdicts is restricted in FELA actions, directed verdicts are frequently proper in particular cases. *Inman v. Baltimore & Ohio Railroad Co.,* 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959); *Euresti v. Washington Terminal Co.,* 280 F.2d 629, 630 (D.C.Cir. 1960); *Perkoski,* 217 F.2d 642. We conclude that this is one such case.[2]

**A.**

45 U.S.C. § 51 provides in pertinent part:

---

**2.** Since "[t]he Boiler Inspection Act [45 U.S.C. §§ 22, 23] is substantially, if not in form, an amendment to the Federal Employers' Liability Act and is subject to the same construction,"

*Gowins,* 299 F.2d at 434, the principles set out above apply equally to Green's FELA and BIA claims.

Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia and any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

■ In order to recover pursuant to the FELA, a plaintiff must show

■ that he was injured while in the scope of his employment, ■ which employment is in furtherance of the railroad's interstate transportation business, ■ that his employer was negligent, and ■ that his employer's negligence played some part in causing the injury for which compensation is sought under FELA. *Sowards*, 580 F.2d at 714; *Sinkler v. Missouri Pacific Railroad Co.*, 356 U.S. 326, 330, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958); *Moore*, 340 U.S. at 575, 71 S.Ct. at 429; *Urie v. Thompson*, 337 U.S. 163, 174–77, 69 S.Ct. 1018, 1026–28, 93 L.Ed. 1282 (1949); *Armstrong v. Kansas City Southern Railway Co.*, 752 F.2d 1110, 1113 (5th Cir.1985); *Mendoza*, 733 F.2d at 632; *Davis v. Burlington Northern, Inc.*, 541 F.2d 182, 185 (8th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 613 (1976); *Rodriquez*, 473 F.2d at 820; *Tyree v. New York Central Railroad Co.*, 382 F.2d 524, 527

(6th Cir.), *cert. denied*, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967); *Sano v. Pennsylvania Railroad Co.*, 282 F.2d 936, 937–38 (3d Cir.1960); *McCracken v. Richmond, Fredericksburg and Potomac Railroad Co.*, 240 F.2d 484, 487 (4th Cir.1957); *Perkoski*, 217 F.2d 642. Employer liability under the Act clearly extends to injuries caused by fellow employees. *Sinkler*, 356 U.S. at 330, 78 S.Ct. at 762.

■ "[R]easonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence." *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963); *Harrison v. Missouri Pacific Railroad Co.*, 372 U.S. 248, 249, 83 S.Ct. 690, 690, 9 L.Ed.2d 711 (1963); *Scocozza v. Erie R. Co.*, 171 F.2d 745, 746–47 (2d Cir.), *cert. denied*, 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719 (1949); *Rubley v. Louisville & Nashville Railroad Co.*, 208 F.Supp. 798, 802 (E.D.Tenn.1962). "[A] railroad is guilty of negligence if it fails to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct." *Brooks v. Washington Terminal Co.*, 593 F.2d 1285, 1288 (D.C.Cir.), *cert. denied*, 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275 (1979); *Sowards*, 580 F.2d at 715. In the context of conduct which violates an established standard, there must be evidence "of prior disregard of the rule which would 'warrant [ ] a finding of the defendant's knowledge of the practice and of its negligence in the performance of its duty to enforce the rule'." *Brooks*, 593 F.2d at 1289–90. However, "the particular and exact manner of the accident need not be foreseen." *McCracken*, 240 F.2d at 487. "The test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that *an* injury might occur...." *Miller v. Cincinnati, New Orleans & Texas Pacific Railway Co.*, 203 F.Supp. 107, 113 (E.D.Tenn.1962), *aff'd*, 317 F.2d 693 (6th Cir.1963). A railroad has no liability for an assault by one employee upon another in the absence of

notice of the assaulter's "vicious propensities" or where the working area is "not conducive to any unusual risk of assault." *Herold v. Burlington Northern, Inc.*, 342 F.Supp. 862, 864–65 (D.Minn.1972); *Southern Railway Co. v. Bell*, 114 F.2d 341, 343 (4th Cir.1940). "The defendant's duty is measured by what a reasonably prudent person should or could have reasonably anticipated as occurring under like circumstances." *Davis*, 541 F.2d at 185; *Patterson v. Norfolk and Western Railway Co.*, 489 F.2d 303, 305 (6th Cir.1973).

■ Further, although the intentional or "criminal nature of the act causing injury may well bear on the jury's assessment of the defendant's ability to foresee that injury of this type might result from its acts or omissions," similar standards in assessing the sufficiency of the evidence apply to the element of foreseeability as to other elements of the FELA action. *Burns v. Penn Central Company*, 519 F.2d 512, 514 (2d Cir.1975). Although the standard for granting a directed verdict favors plaintiffs in FELA cases, there must be some evidence of foreseeability for a plaintiff to withstand a motion for directed verdict. *Perry v. Morgan Guaranty Trust Co. of New York*, 528 F.2d 1378, 1380 (5th Cir.1976).

In this case, the district court found that the record was devoid of evidence from which a jury of fair-minded men could find foreseeability. 585 F.Supp. at 1025–26. This conclusion is compelled by our own independent review of the testimony. Green testified that although he had occasion to telephone his superiors several times in the course of the work shift, he never mentioned any problem with Dawson and did not report that Dawson was drunk because "he didn't appear drunk to me." Green also testified that arguments such as those between himself and Dawson were common among railroad workers. Green testified that he was in no fear when he went to the Harvard Yard Office and that he was completely surprised by the attack. Green had never had trouble with Dawson previously and was friendly with him when

they had worked together on other occasions.

Ross Sizemore, a member of Green's crew, testified that although he had observed Dawson drinking beer in violation of company rules, he did not believe that Dawson was intoxicated. Sizemore characterized the arguments between Green and Dawson as two-sided and testified that he was surprised to hear of the attack since he did not anticipate any trouble with Dawson.

A.M. Gold, the engineer on the crew, testified that although he had seen Dawson drinking beer that evening, he never considered his behavior sufficiently egregious to consider relieving Dawson from duty. Gold did not expect any trouble between Dawson and Green. Dawson was the regular fireman on Gold's crew and Gold had never previously had trouble with Dawson and reported that Dawson was a good worker. Likewise, brakeman Raymond Rubino testified that the arguments between Green and Dawson were typical of arguments among railroad employees.

■ For the reasons stated above and in the well-reasoned opinion of the district court, it is clear that the record is devoid of evidence that RTR should have foreseen the attack on Green by Dawson. Accordingly, the district court properly granted a directed verdict in favor of RTR.

### B.

■ 45 U.S.C. § 23 provides:

It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with provisions of sections 28 to 30 and 32 of this title and are able to withstand such

test or tests as may be prescribed in the rules and regulations hereinafter provided for.

The liability imposed by the Locomotive Boiler Inspection Act is absolute upon proof of an unsafe part and proximate cause. *Urie,* 337 U.S. at 188, 69 S.Ct. at 1033; *Southern Railway Co. v. Lunsford,* 297 U.S. 398, 401, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936); *Baltimore & Ohio Railroad Co. v. Groeger,* 266 U.S. 521, 528–29, 45 S.Ct. 169, 172–73, 69 L.Ed. 419 (1925); *Holfester v. Long Island Railroad Co.,* 360 F.2d 369, 372 (2d Cir.1966); *Gowins,* 299 F.2d at 433; *Fritts,* 293 F.2d at 363; *Chesapeake & Ohio Railway Co. v. Wells,* 49 F.2d 251, 252 (6th Cir.), *cert. denied,* 284 U.S. 641, 52 S.Ct. 22, 76 L.Ed. 545 (1931); *Simpkins v. Baltimore & Ohio Railroad Co.,* 449 F.Supp. 613, 615 (S.D.Ohio 1976).

■ An action for violation of the BIA is prosecuted as an action under the FELA, *Urie,* 337 U.S. at 189 n. 30, 69 S.Ct. at 1034 n. 30; *Lilly v. Grand Trunk Western Railroad Co.,* 317 U.S. 481, 485, 63 S.Ct. 347, 350, 87 L.Ed. 411 (1943), and the FELA causation standard applies, *Carter v. Atlanta & St. Andrews Bay Railway Co.,* 338 U.S. 430, 434, 70 S.Ct. 226, 229, 94 L.Ed. 236 (1949). A plaintiff need not establish that the defect—the inoperative radio in this case—was the sole cause of injury. *Carter,* 338 U.S. at 435, 70 S.Ct. at 229 (contributory proximate cause is sufficient); *Coray v. Southern Pacific Co.,* 335 U.S. 520, 523–24, 69 S.Ct. 275, 276–77, 93 L.Ed. 208 (1949); *Peymann v. Perini Corp.,* 507 F.2d 1318, 1324 (1st Cir.1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975) (Jones Act); *Hausrath v. New York Central Railroad Co.,* 401 F.2d 634, 637 (6th Cir.1968); *Givens v. Missouri-Kansas-Texas R. Co. of Texas,* 195 F.2d 225, 230 (5th Cir.1952). Causation is not established if the defect or unsafe condition "merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury." *Davis v. Wolfe,* 263 U.S. 239, 243, 44 S.Ct. 64, 66, 68 L.Ed. 284 (1923). "Where there has been a failure of a required appliance, there is liability only where the failure of the appliance not only creates a condition under which, or an incidental situation in which the employee is injured, but where the defective appliance is itself an efficient cause of or the instrumentality through which the injury is directly brought about." *Reetz v. Chicago & Erie Railroad Co.,* 46 F.2d 50, 52 (6th Cir.1931); *Anderson v. Baltimore & Ohio Railway Co.,* 89 F.2d 629, 630–31 (2d Cir.), *cert. denied,* 302 U.S. 696–97, 58 S.Ct. 14, 82 L.Ed. 538 (1937).

While it is uncontested that the radio on the engine was inoperable, the district court directed a verdict in favor of RTR on the basis that the radio was not a proximate cause of Green's injuries. 585 F.Supp. at 1028–30. Green theorizes that the defective radio caused his injuries because (1) engineer Gold could not radio to have Dawson replaced, and (2) Green would not have gone to the Harvard Yard Office telephone, therefore, and would not have been attacked. Neither theory finds support in the record.

■ First, testimony establishes that Gold did not feel it was necessary to relieve Dawson. Further, it is unlikely that any member of the crew would have sought to relieve Dawson using the radio rather than the telephone in light of the fact that radio transmissions are heard throughout the yard. Second, in accord with the principles of *Davis* and *Reetz,* the broken radio was merely an incidental condition in the scenario in which plaintiff was injured, rather than the instrument through which the injury was directly brought about. Under the facts of this case, it is entirely too speculative to conclude that Dawson's attack on Green was caused by the fact that the radio on the engine was inoperable. That Green went to the yard office to make a call rather than walking directly to his car alone as did brakemen Sizemore and Rubino made it no more or less likely that he would have been assaulted by Dawson. For these reasons and those stated in the opinion of the district court, we conclude that the district court correctly directed a verdict in favor of defendant RTR.

Accordingly, the judgment of the district court is AFFIRMED.