782 F.2d 1042
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Louis Mang, Jr., Plaintiff-Appellant,
vs.
Norfolk and Western Railway Company, Defendant-Appellee.
 84-3574
 United States Court of Appeals, Sixth Circuit.
 12/11/85
 
 Before MERRITT and CONTIE, Circuit Judges; and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The plaintiff-appellant, Louis Mang, Jr., appeals from a judgment entered by the district court on a directed verdict in favor of the defendant-appellee, Norfolk and Western Railway Co. Plaintiff brought his action under the Federal Employers' Liability Act ('FELA'), 45 U.S.C. Sec. 51, et seq., for alleged injuries sustained in a railroad grade crossing collision. For the reasons hereinafter stated, we affirm.
 
 I.
 
 2
 Since the disposition of this case depends entirely upon the evidence presented to the district court, we set forth in detail the following facts. The plaintiff, Louis Mang, Jr., was an experienced train engineer with 27 years of work for the Norfolk and Western Railway Co., ('Railway'), prior to the accident at issue in this case. On November 7, 1979, Mang was assigned as an engineer on the westbound train commencing its run in Brewster, Ohio and terminating in Bellevue, Ohio. Mang testified that he had been the engineer of this same westbound run on numerous previous occasions during the past 15 years.
 
 
 3
 The track utilized for this run was a single line oriented essentially in an east-west direction which proceeded through the corporate city limits of Norwalk, Ohio, on its way to Bellevue, Ohio. Within the city limits of Norwalk, proceeding in a westbound train, the track moves from its westerly direction and crosses under Main Street several blocks west of the center of the city in an 'underground' passage. Several blocks north of Main Street the track again turns westerly and leaves the city limits several miles later. This 'underground' is a ditch with stone banks of sufficient depth that the entire train is below the surface of the city. As a westbound trains leaves the north end of this 'underground' and is turning to the west, it crosses the intersection of Jefferson and Newton Streets. The next grade crossing west of Newton Street is the North Pleasant Street crossing which is approximately 700 feet from Newton Street.
 
 
 4
 The accident in question here occurred at the North Pleasant Street grade crossing between the westbound train engineered by plaintiff Mang and a northbound tractor-trailer driven by one Michael Bernat. North Pleasant Street generally runs in a north-south direction and is the second to last crossing before the train leaves the city limits. Between Newton and North Pleasant Streets, the single main line has switches to a running track and two switching tracks that service the Norfolk and Western yard that begins immediately west of North Pleasant Street. As a consequence, a vehicle travelling across the grade crossing at North Pleasant Street crosses over four separate tracks. The main track is the next southerly track and the two switching tracks are the most southerly tracks crossing North Pleasant Street. At the time of the accident, crossbuck signs were erected approximately 30 feet south of the southernmost track, an advance warning sign was located somewhat south of the crossbuck, and white road markings south of the tracks warned of the railroad tracks.[1]
 
 
 5
 At approximately 2:30 p.m. on November 7, 1979, the train approached the North Pleasant Street crossing. The train was travelling at approximately 20 m.p.h. as it left the underground passage and headed west crossing the Newton Street grade crossing.[2] At all pertinent times, the train was following the proper signal procedure in its approach to the North Pleasant Street crossing utilizing the train's whistle, ringing the train's bell and burning the train's headlight. The weather was clear. Inside the lead engine, Mang was seated on the north side of the engine and the head brakeman, Kenneth Wilson, was seated on the south side.
 
 
 6
 Michael Bernat's tractor-trailer was heading north on North Pleasant Street and was at the southern side of the North Pleasant Street grade crossing as the train approached the Newton Street crossing. Bernat testified that he came to a complete stop approximately two automobile lengths from the southern most track. Bernat stated that when he looked to his right (east towards the oncoming train), he could not see any train because there was an obstruction blocking his view. However, upon further clarification, Bernat testified that he had a clear view to the east 'to the curve in the track.' This curve was later identified as the Newton Street intersection which was 700 feet east of North Pleasant Street. Bernat stated that after looking both directions and seeing no trains, he proceeded into the intersection and did not see anything until the train collided with his trailer. The negligence of Bernat was conceded by both parties at trial.
 
 
 7
 Gary Friess, an employee of Railway, witnessed the accident from the yard office located west of the North Pleasant Street intersection. Friess testified that the tractor-trailer driven by Bernat 'pulled up to the railroad crossing and made a rolling stop' and then continued across the tracks. As a motorist, Friess also frequently crossed North Pleasant Street at the grade crossing in a northbound manner identical to the circumstances of this accident, and he testified that a motorist's view was not obstructed by the building to the east and that one could see clearly to the Newton Street intersection.
 
 
 8
 Kenneth Wilson, the head brakeman accompanying Mang in the lead engine, testified that the Bernat tractor-trailer never came to a complete stop but only slowed down as he reached the southern side of the tracks and then sped up and started across the tracks as if he was trying to beat the train across the tracks. Wilson also frequently travelled northbound on North Pleasant Street as a motorist and he testified that the view to the east was clear all the way to Newton Street. Plaintiff Mang's testimony further indicated that Bernat's vehicle never came to a stop but was moving the entire time it was within his view.
 
 
 9
 When the engine was approximately 300 feet from the crossing, the tractor-trailer began to proceed across the four tracks. At this juncture, Mang and Wilson 'put it [the train] in emergency.' The Bernat tractor cleared the crossing but the engine struck the middle of the trailer broadside. As a result of the collision, the lead engine derailed but remained upright.
 
 II.
 
 10
 Plaintiff brought his action against Railway under FELA, 45 U.S.C. Sec. 51. This section provides in pertinent part:
 
 
 11
 Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the engligence of any of the officers, agents, or employees of such carrier, or by reason of any defect of insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.
 
 
 12
 The elements of a cause of action that the plaintiff must show under FELA are:
 
 
 13
 (1) that he was injured while in the scope of his employment, (2) which employment is in furtherance of the railroad's interstate transportation business, (3) that his employer was negligent, and (4) that his employer's negligence played some part in causing the injury for which compensation is sought under FELA.
 
 
 14
 Green v. River Terminal Railway Co., 763 F.2d 805, 808 (6th Cir. 1985) (citations omitted).
 
 
 15
 The element at issue in this appeal is the negligence of Railway, and more specifically, the foreseeability of harm by Railway. 'Reasonable foreseeability of harm is an essential ingredient of Federal Employers' Liability Act negligence.' Green, 763 F.2d at 808. (citations omitted). Furthermore, it has been stated:
 
 
 16
 The test of foreseeability does not require that the negligent person should have been able to foresee the injury in the precise form in which it in fact occurred. Rather it is sufficient if the negligent person might reasonably have foreseen that an injury might occur . . .
 
 
 17
 Green, 763 F.2d at 808, citing, Miller v. Cincinnati, New Orleans & Texas Pacific Railway Co., 203 F. Supp. 107, 113 (E.D. Tenn. 1962), aff'd, 317 F.2d 693 (6th Cir. 1963).
 
 
 18
 The district court in granting a directed verdict for Railway, concluded that the plaintiff had offered no evidence that this was a hazardous crossing, no evidence of similar accidents, no evidence of violation of state authority, and that it would be pure 'guesswork' on the part of the jury to find this grade crossing hazardous. In light of the remedial purposes and the legislative desire to preserve the plaintiff's right to a jury trial, FELA is to be liberally construed in favor of the injured plaintiff which results in a restricted ability of the court to grant a directed verdict:
 
 
 19
 Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.
 
 
 20
 Green, 763 F.2d at 806-807, citing, Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506-507, 77 S. Ct. 443, 1 L. Ed. 493 (1957) (citations omitted). This Court has stated that 'a complete lack of probative facts' must be found in order to direct a verdict in a FELA case. Green, 763 F.2d at 807, citing, Fritts v. Toledo Terminal Railroad Co., 293 F.2d 361, 362 (6th Cir. 1961). Therefore, 'while 'disbelief . . . [in] testimony would not supply a want of proof,' Moore v. Chesapeake & Ohio Railway Co., 340 U.S. 573, 576, 71 S. Ct. 428, 430, 95 L. Ed. 547 (1951), '[s] peculation cannot supply the place of proof,' id. at 578, 71 S. Ct. at 430.' Green, 763 F.2d at 807.
 
 
 21
 Despite this heavy burden which is increased by having to consider the evidence in a light most favorable to the nonmoving party, directed verdicts may be granted in FELA actions in the appropriate circumstances. Green, 763 F.2d at 807, citing, Rodriguez v. Delray Connecting Railroad, 473 F.2d 819, 820 (6th Cir. 1973); (citations omitted). The rationale for granting a directed verdict in these limited circumstances is that liability under the Act is predicated on negligence and not upon strict liability. Davis v. Illinois Railroad Co., 359 F.2d 780, 781 (6th Cir. 1966). The correct inquiry is 'whether the railroad, by failing to exercise all reasonable care, participated in any manner to effect or permit the unsafe condition.' Bridger v. Union Railway Co., 355 F.2d 382, 386 (6th Cir. 1966). Consequently, the issue in this appeal focuses on whether there was any probative evidence whatsoever presented by Mang, construed in a light most favorable to him, to show that Railway had any reason to foresee that an injury might occur at the North Pleasant Street grade crossing between a westbound train and northbound vehicular traffic.
 
 
 22
 The parties disagree on the type of evidence necessary to show reasonable foreseeability. It is clear that the plaintiff need not submit evidence of prior accidents or similar circumstances to send the issue of negligence to the jury in FELA actions, Gallick v. Baltimore & Ohio Railroad Co., 372 U.S. 108, 121, 83 S. Ct. 601, 9 L. Ed. 2d 633 (1963), but failure to do so can be significant to the higher court on appeal. Inman v. Baltimore & Ohio Railroad Co., 361 U.S. 138, 80 S. Ct. 242, 4 L. Ed. 2d 198 (1959). In the Inman case, a flagman employed by the railroad was injured one evening when a drunken motorist ran a red light and struck the flagman. The flagman contended that his employer failed to provide a safe place to work under his FELA claim. His evidence to support the reasonable foreseeability of harm and the resultant employer negligence consisted of the following: (1) the employee's duties he had to perform; (2) demonstrative evidence of the physical layout of the worksite as it existed at the time of the accident; and (3) the remarks of one witness to the accident whose testimony was that numerous people 'jumped the gun' at this intersection. Id. at 139.
 
 
 23
 The Supreme Court, in affirming the lower court's granting of the directed verdict, stated the following after reviewing the above evidence:
 
 
 24
 The Act does not make the employer an insurer. Here petitioner had been working at Bettes Corners for seven years, performing the same duties under like circumstances . . .. No accidents had occurred during that long period . . ..
 
 
 25
 . . . The burden of proving that the crossing was an unsafe place to work was on petitioner. It depended on some type of testimony showing the hazards at the crossing. There is no evidence of complaint to the railroad, nor is there testimony of similar occurrences in the record. . . . Under such circumstances, they are too slender a reed for us to say that the decision of Ohio's court is erroneous.
 
 
 26
 Id. at 140-141.
 
 
 27
 The only evidence put forth by plaintiff Mang in this case is analogous to that of Inman, supra: (1) the normal routine of the westbound train and the crew as it passes North Pleasant Street; (2) demonstrative evidence of the physical layout of the worksite as it existed at the time of the accident; and (3) the testimony of tractor-trailer driver Bernat that something obstructed his view, but that he could see the 700 feet to the curve at Newton Street. This evidence is no more sufficient than that presented in Inman, supra, and the Supreme Court, applying FELA standards, stated it was not enough to reverse the lower court's grant of a directed verdict. Further, we find the existence of other evidence favoring Railway, including: (1) compliance with all applicable state law and PUCO authority; (2) the negligence of Bernat; (3) no prior complaints of any Railway employees as to this grade crossing; and (4) no evidence of similar prior accidents. Therefore, the district court did not err in granting the directed verdict for Railway and we affirm.
 
 III.
 
 28
 The second issue presented on appeal by the plaintiff is whether the district court improperly excluded the plaintiff's evidence regarding prior accidents at the North Pleasant Street grade crossing. Specifically, the plaintiff attempted to introduce evidence of three prior night-time accidents involving eastbound trains and northbound vehicular traffic at the North Pleasant Street grade crossing. In granting a motion in limine for Railway, the district court determined that prior accidents involving westbound trains at the North Pleasant Street grade crossing would be admissible, while accidents at this intersection involving eastbound trains would not be admissible.
 
 
 29
 Evidence of prior accidents may be introduced in a personal injury suit to prove knowledge of a dangerous condition that caused an accident. Bridger, 355 F.2d at 390. The admissibility of this evidence is tempered by the need to show that these accidents occurred in similar circumstances in order to prove prior knowledge that the crossing was unsafe and dangerous. Stoler v. Penn Central Transportation Co., 583 F.2d 896, 898 (6th Cir. 1978); Bridger, 355 F.2d at 389-391. In Roundtree v. Seaboard CoastLine Railroad Co., 418 F. Supp. 220, 223 (M.D. Fla. 1976), the court provided the following analysis:
 
 
 30
 Careful review of the above answers to interrogatories convinces this Court that the factors claimed by plaintiffs to constitute a hazardous condition were not present in the prior mishaps . . ..
 
 
 31
 . . . (I)t is only logical to conclude that the time of day, the kind of day, and the direction of the vehicles are factors absolutely necessary to meeting the burden of showing 'substantial similarity' in circumstances. (Footnote omitted)
 
 
 32
 Plaintiff's need to prove prior knowledge on the part of Railway as to the dangerous condition that existed involving the limited sight distance of a westbound train from North Pleasant Street would not be made more plausible by evidence of accidents involving eastbound trains. The trial judge is given ultimate discretion of determining whether evidence is irrelevant and misleading under the Fed. R. Evid., Rules 401-403, and can only be overturned for an abuse of discretion by the trial court. United States v. Jenkins, 525 F.2d 819, 824 (6th Cir. 1975), citing, United States v. Wright, 489 F.2d 1181, 1186 (D.C. 1973).
 
 
 33
 In this case, it was clearly within the discretion of the trial court to limit the evidence of prior accidents to similar circumstances, especially in view of the disparity of the physical circumstances. Mang's further contention that eastbound train traffic distracts northbound vehicular traffic and therefore contributes to the dangerousness of the crossing, can be eliminated by the lack of evidence in the record that there was any eastbound train traffic during the time when this accident occurred. Therefore, the trial court's decision denying the admissibility of these three prior accidents is not an abuse of discretion and is affirmed by this Court.
 
 
 34
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 35
 MERRITT, Circuit Judge, dissenting.
 
 
 36
 This FELA railroad crossing accident case should have gone to the jury. The photographs and diagrams of the crossing show that a motorist stopped at the tracks can see only 700 feet up the track to the right. A train traveling that distance at 20 miles per hour would take about 20 seconds. A truck driver can easily stop his rig at the tracks, look to his right and see nothing, look to his left and see nothing, and begin to cross at a slow rate of speed only to be hit by a freight train just out of his view when he first looked up the track to his right. This short reaction time raises a jury question: was the railroad negligent in failing to provide a better system for warning drivers at this crossing of the presence of trains just around the curve 750 feet up the track? The Court has failed to follow the long line of FELA cases cited in its opinion in which the Supreme Court has instructed us in clear language to send these kinds of cases to the jury.
 
 
 
 [1]
 Ohio Revised Code Sec. 4955.33 provides the statutory duty for Railways to place appropriate signage to warn of locomotive traffic. In this case, the railroad had actually exceeded the existing statutory requirements. However, a railroad may be required under Ohio law to take additional precautions beyond those normally imposed by statute, if conditions are sufficiently dangerous. The standard to measure this extra duty is whether the railroad knows or should have known that a particular crossing is especially dangerous. Stoler v. Penn Central Transportation Co., 583 F.2d 896, 898 (6th Cir. 1978). This inquiry results in the resolution presently confronting this Court on appeal, the foreseeability of harm given under the existing circumstances
 Further, the Public Utilities Commission of Ohio has been vested with the power and jurisdiction to supervise and regulate railroads in Ohio. Ohio Revised Code Sec. 4907.03. Pursuant to these powers, PUCO is entitled to make determinations for additional safety devices at grade crossings if the intersection is found to be dangerous by the commission. Ohio Revised Code Sec. 4907.47. There was evidence presented at trial that the PUCO had not found this extrastatutory protection necessary or that any previous inquiry had ever been undertaken into the necessity of this protection for this intersection.
 Finally, an engine crew may assume that a motorist will yield the right-of-way to a train when the presence of the train is plainly audible via its emitted signal or an approaching train is plainly visible. Ohio Revised Code Sec. 4511.62(A)(4)&(5).
 
 
 [2]
 This speed placed the train within the Railway's designated speed limit of 25 m.p.h. for this stretch of track. The city of Norwalk did not have any regulation of the speed of the trains