848 F.2d 194
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kenneth STEFFENHAGEN, Plaintiff-Appellee,
v.
NORFOLK & WESTERN RAILWAY COMPANY, Defendant-Appellant.
 No. 87-3194.
 United States Court of Appeals, Sixth Circuit.
 May 3, 1988.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and GEORGE E. WOODS, District Judge.*
 PER CURIAM.
 
 
 1
 Norfolk & Western Railway Company ("Norfolk & Western") appeals from a judgment entered upon a jury award of $450,000 in favor of Kenneth Steffenhagen, for personal injuries sustained on February 6, 1982, while he was operating a Norfolk & Western train in the course of his employment as a locomotive engineer. The train ran over a rough stretch of roadbed while leaving the Portsmouth railroad yard on its route to Bellevue, Ohio. The access panel covering an amp meter on the engineer's instrument console fell open and lodged against the front bulkhead of the locomotive cabin. The amp meter had two terminals through which a potential of 600 volts of electricity moved. Steffenhagen's left hand came into contact with the terminals when he reached across the console in an effort to catch the access panel.
 
 
 2
 He felt a shock, was unable to pull his hand away, and started to shake violently. After the contact was broken, the entire left side of his body was numb for a period of five to fifteen minutes and, thereafter, he experienced pain in his hand, arm, and shoulder. He suffered two burn marks (later diagnosed as electrical entrance and exit wounds), one at the end of, and the other at the base of, his left middle finger.
 
 
 3
 Steffenhagen was treated at a Bellevue hospital emergency room. Dr. D. Ross Irons examined him on February 11, after he had been seen the previous day by Dr. Neilson, an associate. Dr. Irons permitted him to return to work. Several days later, he reinjured his shoulder while dismounting from a locomotive.[1] He has been under the care of Dr. R.E. Dwight since April 3, 1982.
 
 
 4
 Dr. Dwight testified that Steffenhagen suffered a torn glenoid labrum of the left shoulder, was required to undergo reconstructive surgery, can no longer operate a locomotive, and has sustained permanent injuries. He further testified that, in his opinion, the electric shock caused sufficient muscular contraction to produce the tear in the labrum and an instability in the shoulder, which subsequently required surgery.
 
 
 5
 The jury found that Norfolk & Western had violated 45 U.S.C. Sec. 23 of the Boiler Inspection Acts ("the BIA"). The liability imposed by the BIA is absolute upon proof of an unsafe part and proximate cause; an action for its violation is prosecuted as an action under the Federal Employers' Liability Act (codified as amended at 45 U.S.C. Secs. 51-60), and the FELA standard of causation applies. Green v. River Terminal Ry., 763 F.2d 805, 810 (6th Cir.1985).
 
 
 6
 Norfolk & Western argues that the court erred in denying its separate motions to strike the opinion testimony of two expert witnesses for Steffenhagen: Dr. Thomas Stuart, a professor of electrical engineering, and Dr. Dwight. "The decision to allow a witness to testify as an expert is largely within the discretion of the trial court and will not be disturbed on appeal unless clearly erroneous or an abuse of discretion." Davis v. Combustion Eng'g, Inc., 742 F.2d 916, 919 (6th Cir.1984).
 
 
 7
 Stuart first gave a detailed description and explanation of the nature and function of the various parts of the locomotive's electrical circuitry. The trial court then permitted Stuart to answer, over Norfolk & Western's objections, a series of hypothetical questions. Each question assumed that an individual had contacted the amp meter terminal with his finger, and had contacted a ground on the console or elsewhere with some other part of his body. Stuart's answers described the flow of electricity that would result under each of the various assumptions.
 
 
 8
 Norfolk & Western argues that, "[o]n the basis of the uncontradicted physical facts in the case, ... Dr. Stuart could only testify that the electricity entered at the tip of plaintiff's finger, and exited at the base of plaintiff's finger, with no electricity flowing to the shoulder."
 
 
 9
 However, Stuart's entire testimony on direct examination was simply an elementary lesson explaining to the jury the fundamental principles of electricity.[2] That testimony appears to be a classic example of the use of expert testimony as contemplated by Rule 702 of the Federal Rules of Evidence.
 
 
 10
 The evidence supports the assumptions of fact in the hypothetical questions relevant to the outcome of this case. Several alternate grounds existed close to Steffenhagen's body in the confined area of the engineer's station, and the train was jerking sideways. His reaction to the shock, as confirmed by his and other testimony, supported a jury finding that his body came into contact with a second alternate ground. His testimony with respect to the manner in which he descended from the locomotive, in the light of expert testimony, supported the jury's rejection of Norfolk & Western's argument that his injuries were caused by the second incident.
 
 
 11
 Norfolk & Western also argues that Dr. Dwight's opinion should have been excluded because it was based upon an assumption that Steffenhagen's body contacted a second ground and because Dr. Dwight, not being an electrical expert, was not qualified to express an opinion with respect to electricity as the cause of Steffenhagen's injuries.
 
 
 12
 We disagree. In view of the evidence concerning the location of objects that could have grounded the electricity which entered Steffenhagen's body, and his testimony about his physical reactions upon receiving the shock, there was a sufficient basis upon which Dr. Dwight could construct his opinion. In addition, there is no indication from the record that the doctor's background did not qualify him to express an opinion with respect to electricity as the cause of Steffenhagen's injuries.
 
 
 13
 Norfolk & Western further argues that the court's instructions to the jury were erroneous. It contends that the jury should have been told that it must find for Norfolk & Western if Steffenhagen's negligence was the sole proximate cause of the injury. It further complains that the instructions given did not permit the jury to consider Norfolk & Western's violation of the BIA as creating only an "incidental condition in the scenario in which plaintiff was injured," Green, 763 F.2d at 819, rather than being the proximate cause of those injuries.
 
 
 14
 "Instructions are to be considered as a whole and where they fairly and adequately cover material issues, it is not error to refuse to give requested instructions, even though they correctly state the law." Carruba v. Transit Casualty Co., 443 F.2d 260, 264 (6th Cir.1971). The instructions, considered as a whole, fairly and adequately covered the material issues in this case. Under the instructions given, the jury could not have found for Steffenhagen if his actions were the sole proximate cause of his injuries, or had not been caused by an unsafe part. Steffenhagen's injury was the type of injury that the BIA obviously was intended to prevent; hence, it cannot be said that the open amp meter was simply an incidental condition. Cf. Green, 763 F.2d at 810 (broken radio incidental when injuries were caused by third party's assault); Lang v. New York Cent. R.R., 255 U.S. 455, 459-61 (1921) (Safety Appliance Act held not intended to protect a brakeman who was injured when he failed to stop a string of switched cars before they ran into a standing car which lacked a draw bar and coupler).
 
 
 15
 For the reasons stated above, the judgment of the trial court is affirmed.
 
 
 
 *
 The Honorable George E. Woods, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Norfolk & Western defended upon the ground that all of the electricity must have both entered and exited from Steffenhagen's finger, and that his injuries were caused by the second incident. However, the jury found in answers to interrogatories that all of Steffenhagen's injuries resulted from the first incident and none resulted from the second incident
 
 
 [2]
 Stuart expressed no opinion with respect to the facts at issue in the case, except upon cross-examination. When cross-examined, he testified that it was common knowledge among electrical engineers that paralysis can result if an electric shock is high enough when current flows from one limb to another. He further expressed the opinion that, because of the paralysis suffered by Steffenhagen, the current must have gone up his arm and exited either somewhere from his torso or another limb. He stated that it was not probable that Steffenhagen would have experienced that paralysis if the current had both entered and exited in the finger