[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 222.]

VANCE, APPELLANT, *v*. CONSOLIDATED RAIL CORPORATION, APPELLEE.

[Cite as *Vance v. Consol. Rail Corp*., 1995-Ohio-134.]

*Employment relations—Recovery of damages from Consolidated Rail Corporation under Federal Employers' Liability Act for infliction of emotional distress suffered during employment permitted, when.*

(No. 94-137—Submitted April 5, 1995—Decided August 16, 1995.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 63806.

———————————

{¶ 1} On January 26, 1990, plaintiff-appellant Larry D. Vance filed suit against his former employer, defendant-appellee Consolidated Rail Corporation ("Conrail"), seeking to recover damages from Conrail under the Federal Employers' Liability Act ("FELA"), Section 51 *et seq.,* Title 45, U.S.Code, for infliction of emotional distress he claimed to have suffered during his employment.

{¶ 2} Plaintiff began his employment with Conrail in 1976, when the corporation was formed by the merger of seven separate bankrupt railroads into one unit. Plaintiff had been an employee of one of the railroads involved in the merger, the Erie Lackawanna Railroad ("Erie"), since 1968. He went on sick leave from Conrail in 1987, and remained on sick leave until 1988, when he was medically disqualified from work. In his complaint, plaintiff claimed he was incapacitated from working due to emotional distress brought about by an abusive work environment which Conrail negligently failed to correct. The basis of plaintiff's claim is set forth in paragraphs one and five of his complaint:

"1. This suit is brought under the Federal Employers' Liability Act (45 U.S.C., Sec. 51, et seq.). The action arises out of the failure of Defendant Railroad, Consolidated Rail Corporation, to provide Plaintiff, Larry Vance, with a safe place to work. Defendant Railroad negligently caused and inflicted upon Plaintiff severe

emotional distress, anxiety, and depression. This caused disabling psychological harm, and accompanying physical harm.

"* * *

"5. The severe emotional distress and resulting injury were directly and proximately caused by Defendant Railroad. It negligently supervised and condoned the known conduct of Plaintiff's superiors and fellow employees who in the process of making work assignments and in other work related associations, subjected Plaintiff to torment, embarrassment, humiliation, frustration, harassment, inequity, ridicule, and other severe emotional distress, because he was a former employee of Erie Lackawanna Railroad. This outrageous conduct throughout Plaintiff's employment relationship ultimately caused Plaintiff's said emotional breakdown and disqualification from his job, all of which was reasonably foreseeable by Defendant Railroad."

{¶ 3} At trial, plaintiff testified that the former employees of Penn Central ("PC"), another railroad involved in the merger which formed Conrail, hated the less numerous former Erie employees. Plaintiff testified that he and other former Erie workers were subjected to name-calling, harassment and torment. Plaintiff recounted the following instances which he claimed were primarily inflicted by former PC employees. Specifically, he testified as to the following matters:

{¶ 4} He was called a scab and other scurrilous names by former PC employees of Conrail, and derogatory remarks about former Erie employees were written on locker room walls and elsewhere at the workplace.

{¶ 5} He found a dead bloody rat on top of his sandwich in his lunch box. Whoever put the rat into the lunch box had pried open the locked door of his truck cap.

{¶ 6} Not being assigned a locker at some work locations forced him to change clothes in parking lots. Sugar was put in the gas tank of his wife's car while it was parked at a railyard when he drove it to work one day. His supervisors would

override his decision to pull railcars out of service for defects and would put the cars back in service.

{¶ 7} He was not allowed to schedule his vacations when he wanted them, even though he had more seniority than those who got their chosen dates. He was nearly run over by another employee in a truck who wanted to "put a scare" into him.

{¶ 8} He was not furnished needed safety equipment and had to buy his own lantern and batteries when the company failed to provide them. He was not furnished a key to control the blue signal lights that indicated the presence of a worker on the tracks.

{¶ 9} In the presence of a supervisor, he was threatened by a fellow employee with a chipping hammer (a sharp-pointed hammer with a four-or five-inch handle used for removing scale from welds), which caused great emotional distress.

{¶ 10} He was taunted about his sex life after he confided in a fellow employee about impotency problems and the other workers learned of the problem.

{¶ 11} He was not properly oriented as to track layout by supervisors when he traveled to different railyards to work. The words "Erie scab" were scraped into the side of his own truck, apparently with a key.

{¶ 12} While working at a railyard, he received an anonymous phone call threatening that "you won't know what's going to hit you."

{¶ 13} Plaintiff testified to a generally antagonistic work relationship between the former PC employees and the former Erie employees at Conrail and indicated that he believed Conrail did very little to regulate the conduct of former PC employees toward former Erie employees. Plaintiff testified that he complained of several of the abusive incidents recounted above to supervisors, and also that supervisors witnessed some of the incidents, but that no attempt to ameliorate the abuse was undertaken by Conrail. Plaintiff testified that it would have done no

good for him to complain about the mistreatment through the union grievance process because the union was dominated by former PC employees who had no interest in stopping it.

{¶ 14} Other witnesses, called both by plaintiff and by Conrail, also testified to animosity between the two groups of employees, although there was disagreement as to the extent of abuse. Conrail called some of the employees who allegedly had harassed plaintiff, and they denied that the events detailed by plaintiff had occurred. Conrail also called past supervisors of plaintiff, who testified that they did not remember that he had ever complained of harassment to them.

{¶ 15} One of the chief points of contention between former Erie workers and Conrail was that many former Erie employees lost seniority when the merger forming Conrail occurred. Plaintiff had participated in an unsuccessful lawsuit with other former Erie employees against Conrail and the union in an attempt to regain seniority. Conrail contended that any anxiety caused to plaintiff by the seniority dispute was irrelevant to plaintiff's FELA case, and had nothing to do with whether Conrail failed to provide plaintiff a reasonably safe workplace.

{¶ 16} Plaintiff's treating psychiatrist, Dr. James Fry, testified that he began to treat plaintiff in 1985, at which time plaintiff told Dr. Fry of his difficulties and unhappiness with his employment since the merger forming Conrail. Dr. Fry diagnosed plaintiff as severely depressed. In 1987, Dr. Fry declared that plaintiff was medically disabled from work due to the depression, which Dr. Fry opined was caused by plaintiff's worrying about his job. Dr. Fry recommended electric shock therapy in 1988. Plaintiff received ten treatments. At the time of trial, plaintiff was receiving fairly large doses of a tranquilizer and an antidepressant. Dr. Fry testified that plaintiff did not speak of specific incidents of harassment on the job until 1988, after plaintiff was disabled from work. Dr. Fry further testified that plaintiff may not have related the incidents until that time due to embarrassment and shame. Dr.

4

Fry also testified that, if the incidents of harassment did occur, they certainly would have contributed to plaintiff's depression.

{¶ 17} After the trial court overruled Conrail's motion for a directed verdict, the jury returned a general verdict for plaintiff for $500,000 in damages. The trial court denied Conrail's motions for judgment notwithstanding the verdict and for a new trial.

{¶ 18} Conrail appealed to the Court of Appeals for Cuyahoga County, raising seven assignments of error. The court of appeals, in a split decision which resolved only Conrail's first two assignments of error, vacated the jury verdict and entered judgment for Conrail, holding that Conrail's motions for a directed verdict and for judgment notwithstanding the verdict should have been granted. The court of appeals majority held that "plaintiff has not proven a cause of action for negligent infliction of emotional distress, even if one were available under the FELA." The majority determined that plaintiff had not proved that Conrail was negligent, in part because he did not show that he was subjected to "unconscionable abuse," and also because he "failed to show that Conrail should have reasonably foreseen his extreme reaction to railroad yard harassment." Based upon its finding of no negligence, the court of appeals majority found it unnecessary to decide whether a claim for negligent infliction of purely emotional distress is cognizable under the FELA.[1]

---

1. In holding as it did, the court of appeals majority resolved only Assignments of Error I and II of Conrail's appeal, and found Assignments of Error III through VII moot, citing App.R. 12(A)(1)(c). Following are Conrail's seven assignments of error:

"I.The trial court erred in denying Conrail's motion for directed verdict/motion jnov on plaintiff's claim for negligent infliction of emotional distress.

"II.The trial court erred in denying Conrail's motion for directed verdict/motion jnov on the issue of negligence.

"III.The trial court erred in denying defendant's motion for directed verdict on the basis that plaintiff failed to plead a specific amount of monetary damages in his complaint.

"IV.The trial court erred in denying defendant's motion for a directed verdict/motion jnov on the statute of limitations.

"V.The trial court erred in allowing the introduction of irrelevant and prejudicial testimony from plaintiff's fellow employees.

**{¶ 19}** The dissenting judge at the court of appeals concluded that a cause of action for emotional distress is available under the FELA, and believed that plaintiff presented sufficient evidence to create a jury question on the issue of Conrail's negligence. The dissenter would have overruled Conrail's first two assignments of error, and would have proceeded to address the remaining ones.

**{¶ 20}** The cause is now before this court pursuant to the allowance of a motion to certify the record.

––––––––––––––––

*Wallace R. Steffen*, for appellant.

*Gallagher, Sharp, Fulton & Norman* and *Sheila A. McKeon*, for appellee.

––––––––––––––––

**ALICE ROBIE RESNICK, J.**

**{¶ 21}** The court of appeals' consideration of this case occurred before the United States Supreme Court announced its decision in *Consol. Rail Corp. v. Gottshall* (1994), 512 U.S., 114 S.Ct. 2396, 129 L.Ed.2d 427, which resolved some issues pertinent to this appeal. In light of *Gottshall*, this case presents two issues for our review: (1) Does plaintiff's claim of negligent infliction of emotional distress place him within the class of plaintiffs who may recover under the FELA? (2) If issue one is resolved in plaintiff's favor, did plaintiff sufficiently demonstrate that Conrail's negligence caused his injuries so as to create a jury question on Conrail's duty, breach of duty, foreseeability, and causation?

**{¶ 22}** At this juncture, we clarify that, while plaintiff's claim may appear to be based upon the intentional actions of fellow employees, the essence of his FELA claim against Conrail is that his employer negligently failed in its duty to provide him with a safe workplace. Therefore, his claim sounds in terms of

---

"VI. The trial court committed reversible error in failing to charge the jury that any award to plaintiff is not subject to income tax.

"VII.   The trial court erred in permitting evidence of plaintiff's future lost wages."

negligent infliction of emotional distress, going to Conrail's negligence in allowing a hostile workplace environment to flourish.

I

A

Federal Employers' Liability Act

{¶ 23} Section 1 of the FELA, Section 51, Title 45 U.S.Code, provides that "[e]very common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

{¶ 24} "In 1906, Congress enacted the FELA to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer or their fellow employees. A primary purpose of the Act was to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases. * * * The coverage of the statute is defined in broad language, which has been construed even more broadly." (Footnotes omitted.) *Atchison, Topeka & Santa Fe Ry. Co. v. Buell* (1987), 480 U.S. 557, 561-562, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563, 570-571. The FELA is to be liberally construed to further its remedial goal. *Gottshall*, 512 U.S. at, 114 S.Ct. at 2404, 129 L.Ed.2d at 440.

{¶ 25} What constitutes negligence for purposes of the FELA is a federal question, which does not vary under different conceptions of negligence under non-FELA state and local laws. "Federal decisional law formulating and applying the concept governs." *Urie v. Thompson* (1949), 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282, 1295. Generally, "FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." *St. Louis Southwestern Ry. Co. v. Dickerson* (1985), 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303, 306. Thus, past decisions of the courts of this state setting the parameters of negligence law in Ohio are largely irrelevant to a

negligence inquiry under the FELA. As a state court, we are as capable of interpreting the FELA as a federal court would be, but we apply the same federal law as the federal courts, without regard to Ohio's negligence law. Since we are bound to apply the unique body of federal decisional law interpreting the FELA, our discussion in this case is of virtually no precedential value to any non-FELA negligence issues that arise under Ohio law.

B

*Gottshall* and the "Zone of Danger" Test

{¶ 26} In *Gottshall, supra*, the United States Supreme Court granted certiorari to determine "the threshold standard that must be met by plaintiffs bringing claims for negligent infliction of emotional distress under FELA." 512 U.S. at, 114 S.Ct. at 2403, 129 L.Ed.2d at 438. The *Gottshall* court determined that "claims for damages for negligent infliction of emotional distress are cognizable under FELA." *Id.* at, 114 S.Ct. at 2407, 129 L.Ed.2d at 444. The court went on to hold that "a railroad has a duty under FELA to avoid subjecting its workers to negligently inflicted emotional injury." *Id*. at, 114 S.Ct. at 2408, 129 L.Ed.2d at 444.

{¶ 27} The liability faced by a railroad for inflicting emotional distress is not, however, unlimited. Even though the FELA requires a liberal interpretation, it is not a workers' compensation statute. Liability is based on the employer's negligence. *Id*. at, 114 S.Ct. at 2404, 129 L.Ed.2d at 440. The *Gottshall* court, noting that common-law principles play a significant role in the development of the FELA negligence law, evaluated the various common-law tests which have developed to determine which claims of negligent infliction of emotional distress may go forward, based on the policy considerations underlying recognition of the tort. The court chose the "zone of danger" test as the proper test to be applied in determining whether, as a threshold matter, a plaintiff has stated a cognizable claim under the FELA. 512 U.S. at, 114 S.Ct. at 2410, 129 L.Ed.2d at 447.

**{¶ 28}** Under the zone of danger test, recovery for emotional injury is limited "to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id*. at, 114 S.Ct. at 2406, 129 L.Ed.2d at 443. "Under this test, a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not. Railroad employees thus will be able to recover for injuries – physical and emotional -- caused by the negligent conduct of their employers that threatens them imminently with physical impact." *Id*. at, 114 S.Ct. at 2410-2411, 129 L.Ed.2d at 448.

C

Was Plaintiff in the Zone of Danger?

**{¶ 29}** Consistent with the principles espoused in *Gottshall*, we must determine if plaintiff's claim meets the requirements of the zone of danger test, which it must in order for him to be placed in the class of plaintiffs who may potentially recover under the FELA for the negligent infliction of emotional distress.

**{¶ 30}** The United States Supreme Court opinion in *Gottshall* actually involved the appeals of two separate cases which were consolidated for review. The plaintiff in one of the cases, James Gottshall, sought to recover against his employer, Conrail, for negligent infliction of emotional distress. His claim was based on witnessing the death of a longtime friend and fellow employee. The cause of death was a heart attack which was allegedly precipitated by Conrail's forcing employees, including the deceased friend and also plaintiff, to do overly strenuous work on a hot, humid day. See 512 U.S. at, 114 S.Ct. at 2400-2401, 129 L.Ed.2d at 435-436. Plaintiff Gottshall thus appeared to present primarily a theory of bystander recovery which involved to some extent witnessing an injury to another person as the event that brought about his distress. After holding that the zone of

danger test must be satisfied for recovery for emotional distress under the FELA, the court declined to decide whether Gottshall was in the zone of danger, but remanded to the Third Circuit Court of Appeals to consider the issue. *Id.* at, 114 S.Ct. at 2411, 129 L.Ed.2d at 449. Since the *Gottshall* court made no comments on whether plaintiff Gottshall was in the zone of danger, we can discern no guiding principles emerging from the Supreme Court on that particular plaintiff's situation to aid us in our inquiry in the case before us.

{¶ 31} The other case considered on appeal by the Supreme Court in *Gottshall* involved plaintiff Alan Carlisle. Carlisle claimed his employer, Conrail, caused him emotional distress, and a nervous breakdown, by subjecting him to a great deal of stress on his job, brought about by excessive work responsibilities and working overly long hours. See 512 U.S. at, 114 S.Ct. at 2402, 129 L.Ed.2d at 437-438. Plaintiff Carlisle thus based his claim against Conrail on emotional distress he suffered due to Conrail's alleged failure to provide a safe workplace. After enunciating the zone of danger test, the *Gottshall* court found as a matter of law that Carlisle was not in the zone of danger, refusing to "take the radical step of reading FELA as compensating for stress arising in the ordinary course of employment." 512 U.S. at, 114 S.Ct. at 2412, 129 L.Ed.2d at 449.

{¶ 32} In *Buell, supra*, the United States Supreme Court stated that "whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." 480 U.S. at 568, 107 S.Ct. at 1417, 94 L.Ed.2d at 575. While *Gottshall* establishes the general rule that a plaintiff must be in the zone of danger to recover for emotional distress under the FELA, the case did not attempt to define which plaintiffs are in the zone of danger under situations factually distinguishable from those before the court. In such distinguishable situations, a case-by-case analysis must be undertaken.

**{¶ 33}** We find, through the evidence he presented at trial, that plaintiff was placed in immediate risk of physical impact by Conrail's negligence, so that the zone of danger test was satisfied. In particular, plaintiff testified that important safety devices were denied to him, that a fellow employee came at him with a chipping hammer, and also that a fellow employee attempted to run him over. These instances of abuse to which plaintiff testified at trial indicating plaintiff's fear for his physical safety due to the acts of fellow employees are sufficient to place him in the zone of danger, pending a resolution by the jury of the relevant issues of fact. Plaintiff alleged that Conrail was negligent in failing to provide him with a safe place to work. While much of plaintiff's evidence went to Conrail's failure to provide an emotionally safe place to work, some of the evidence also went to Conrail's failure to provide a physically safe place to work, so that plaintiff was in the zone of danger, as that requirement is defined in *Gottshall*.

**{¶ 34}** We are struck by the differences between plaintiff's emotional-distress claim resulting from effects of his workplace environment and the emotional-distress claim of plaintiff Carlisle in *Gottshall*. Plaintiff here is claiming damages for injuries different in kind from those which arise in the ordinary course of employment. Plaintiff in this case claims that his injuries were caused by a *hostile* work environment, not merely by a *stressful* work environment.

**{¶ 35}** Since plaintiff was in the zone of danger based on an immediate risk of physical impact, we need not determine whether there would be some threshold level of hostility, accompanied by no threat of physical impact, that a plaintiff in a FELA action could demonstrate when the employer is allegedly negligent for allowing the atmosphere of abuse to flourish and that could allow the plaintiff's claim to proceed despite *Gottshall*. In that situation, the plaintiff's claim may be a square peg that does not appear to fit in *Gottshall's* round hole.

II

**{¶ 36}** That plaintiff was in the zone of danger, and so satisfies the threshold *Gottshall* test placing him within the class of plaintiffs who may recover for negligent infliction of emotional distress under the FELA, answers only one of the issues in this case. "To prevail on a FELA claim, a plaintiff must 'prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" *Adams v. CSX Transp., Inc.* (C.A.6, 1990), 899 F.2d 536, 539, quoting *Robert v. Consol. Rail Corp.* (C.A.1, 1987), 832 F.2d 3, 6. The court of appeals majority in this case found that plaintiff failed to prove that Conrail was negligent. We, therefore, must examine the elements of plaintiff's claim.

**{¶ 37}** As this case comes to us, the court of appeals majority reversed the trial court's denial of Conrail's motions for a directed verdict and for judgment notwithstanding the verdict. In FELA cases Ohio law applies where matters of procedure, rather than of substantive federal FELA law, are involved, so that both motions must be evaluated under Ohio's Civ.R. 50. In so doing the evidence must be construed most strongly in favor of the party opposing the motion. To grant either motion, a trial court must find that reasonable minds could come to but one conclusion and that conclusion must be adverse to the party opposing the motion. Civ.R. 50(A)(4); *White v. Ohio Dept. of Transp.* (1990), 56 Ohio St.3d 39, 45, 564 N.E.2d 462, 468 (if reasonable minds can come to more than one conclusion the issue should go to the jury). See *McNees v. Cincinnati Street Ry. Co.* (1949), 152 Ohio St. 269, 272-273, 40 O.O. 318, 320, 89 N.E.2d 138, 141 (standards for granting motion for judgment notwithstanding the verdict and for granting motion for directed verdict are the same).

**{¶ 38}** As a preliminary matter, we agree with the observation made by the court of appeals majority that "there was sufficient medical evidence to establish that plaintiff was suffering from chronic and disabling depression." Conrail does not dispute that plaintiff has suffered emotional injury. Conrail does dispute, however, that the injury is attributable to its negligence.

A

Duty

{¶ 39} There is no doubt that an employer has a responsibility under the FELA to provide a safe place to work. Furthermore, "as part of its 'duty to use reasonable care in furnishing its employees with a safe place to work,' *Buell*, 480 U.S. [557], at 558 [94 L.Ed.2d 563, 568, 107 S.Ct. 1410, 1412], a railroad has a duty under FELA to avoid subjecting its workers to negligently inflicted emotional injury." *Gottshall*, 512 U.S. at, 114 S.Ct. at 2408, 129 L.Ed.2d at 444. The zone of danger test outlines Conrail's duty pertaining to negligent infliction of emotional distress. *Id.* at, 114 S.Ct. at 2410, 129 L.Ed.2d at 447. Conrail clearly had a duty to provide plaintiff, an employee in the zone of danger, with a reasonably safe workplace.

B

Breach of Duty

{¶ 40} Plaintiff testified that the atmosphere of abuse endured by former Erie employees was pervasive throughout the company. It does not require a great leap of reasoning to conclude that if the jury gave credence to plaintiff's allegations, then Conrail had to be aware of the abusive environment, or at the very least, should have been aware of it. Plaintiff alleged that foremen witnessed some of the incidents of abuse, and that nothing was ever done by Conrail to deal with the problems in plaintiff's work environment. Conrail countered at trial by presenting evidence that plaintiff never sufficiently complained of the abuse, and also that much of the abuse did not actually occur, or if it did occur that plaintiff exaggerated the significance of the events. If the jury accepted plaintiff's view of the facts, it could easily have determined that Conrail, acting through its "officers, agents, or employees" (Section 51, Title 45, U.S.Code) at the very least should have been aware that plaintiff was in an unsafe work environment. We find that plaintiff

presented sufficient evidence to create a jury question on whether Conrail breached its duty to provide a safe workplace.

**{¶ 41}** In *Adams, supra*, 899 F.2d at 539-540, the United States Court of Appeals for the Sixth Circuit held that the FELA requires a plaintiff claiming emotional injury to show "unconscionable abuse" before an employer can be found to have breached its duty to provide a safe workplace.

**{¶ 42}** The court of appeals in this case reversed the jury verdict in part because it determined that plaintiff failed to show unconscionable abuse. However, the trial judge instructed the jury that plaintiff had to show that "Conrail's actions amounted to unconscionable abuse" before it would be established that a breach of the duty to provide a safe workplace occurred. Since the jury returned a general verdict for plaintiff that was unclarified by interrogatories, we must assume that the jury followed the trial court's instruction in this regard and that the jury found that plaintiff did suffer unconscionable abuse, as required by *Adams*. We do not comment on the ambiguities of requiring unconscionable abuse (a concept that seems more appropriate in an inquiry regarding a claim for *intentional* infliction of emotional distress) in a *negligence* action brought under the FELA. Furthermore, we need not determine whether the *Adams* unconscionable-abuse test is consistent with the general contours of the Supreme Court's opinion in *Gottshall*, because we find that plaintiff met the heightened burden of showing unconscionable abuse.

C

Foreseeability

**{¶ 43}** The court of appeals majority in this case reversed the jury verdict for plaintiff in part because it found that plaintiff failed to show Conrail should have foreseen his "extreme reaction" to the claimed workplace abuse. However, the foreseeability of plaintiff's reaction is directly dependent on the degree of abuse he endured. As discussed above, we must assume that the jury found that Conrail at the least should have been aware of the hostile work environment surrounding plaintiff; we must also assume that the mistreatment plaintiff endured amounted to unconscionable abuse. We cannot say that a plaintiff who endures unconscionable abuse is not to be expected to display strong reactions or emotions. We are not prepared, as the court of appeals majority was, to characterize plaintiff's response to his situation as an "extreme reaction," which Conrail could not have foreseen as a matter of law. Instead, we find that plaintiff created a jury question as to foreseeability. Since the jury's general verdict was unclarified by interrogatories, we accept the jury's decision that plaintiff's reaction was not excessive given the circumstances, a decision the jury necessarily had to make to arrive at its ultimate conclusion that Conrail was negligent.

D

Causation

**{¶ 44}** As part of the liberal construction accorded to the FELA, a "relaxed standard of causation applies" to a negligence claim under the act. *Gottshall*, 512 U.S. at, 114 S.Ct. at 2404, 129 L.Ed.2d at 440. "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific RR. Co.* (1957), 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, 499. We see no reason to apply a more stringent standard of causation for emotional injury under the FELA than for

physical injury, recognizing like the Supreme Court in *Gottshall* that "'severe emotional injuries can be just as debilitating as physical injuries,'" 512 U.S. at, 114 S.Ct. at 2408, 129 L.Ed.2d at 444 (quoting *Gottshall v. Consol. Rail Corp.* [1993], 988 F.2d 355, 361). We therefore find that in the process of establishing the other elements of Conrail's negligence to the satisfaction of the jury, plaintiff easily met his burden of proving that Conrail's negligence played at least a slight part in producing his injury.

### III

{¶ 45} In summary, based on Part I of our discussion, plaintiff was in the zone of danger under the standards set forth by the Supreme Court in *Gottshall* for recovery for emotional injury under the FELA. In addition, based on Part II of our discussion, we agree with the conclusion of the dissenting judge below that plaintiff raised a jury question as to Conrail's negligence. Construing the evidence most strongly in favor of plaintiff, we defer to the decision of the jury, since reasonable minds could come to different conclusions regarding Conrail's negligence. We adopt the position of the dissenting judge below, who would have resolved Conrail's first two assignments of error in that court by concluding that Conrail's "motions for directed verdict and judgment notwithstanding the verdict were correctly overruled by the trial court."

{¶ 46} For all the foregoing reasons, the judgment of the court of appeals on the issues addressed in its opinion is reversed.[2] We remand this cause to the

---

2. In addition to arguments relative to the FELA, plaintiff argues that the court of appeals actually reversed the jury verdict by a two-to-one vote on the weight of the evidence, thereby violating the prohibition contained in Section 3(B)(3), Article IV of the Ohio Constitution that "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." We find that the court of appeals majority did not reverse on the weight of the evidence, but reversed based on its resolution of a question of law, so that a violation of the Ohio Constitution did not occur. See *Ruta v. Breckenridge-Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935.

court of appeals for further proceedings, to allow that court to rule on those assignments of error raised by Conrail that have not yet been addressed.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

WRIGHT, J., concurs separately.

COOK, J., dissents.

_____

**WRIGHT, J., concurring.**

{¶ 47} I write separately because I believe that the majority applies an imperfect analysis to the case at hand. In so doing, the majority opinion distorts the otherwise clear distinction between intentionally and negligently inflicted emotional distress and, as a result, also distorts the scope of an employer's liability under the FELA for intentional injuries inflicted upon an employee by another employee.

{¶ 48} The majority construes Vance's FELA claim against Conrail as a claim for negligent infliction of emotional distress. Although Vance obviously suffers from emotional distress, that distress was not *negligently* inflicted. More accurately, Vance's fellow employees *intentionally* caused his emotional distress. Properly construed, Vance's claim against Conrail is not that Conrail negligently inflicted emotional distress on him, but rather that Conrail negligently supervised its employees, thereby allowing the intentional acts of abuse to occur. In fact, this is the theory advanced in Vance's complaint:

"5. The severe emotional distress and resulting injury were directly and proximately caused by Defendant Railroad. It *negligently supervised* and condoned the known conduct of Plaintiff's superiors and fellow employees who *** subjected the Plaintiff to torment, embarrassment, humiliation, frustration, harassment,

inequity, ridicule, and other severe emotional distress, because he was a former employee of Erie Lackawanna Railroad." (Emphasis added.)

{¶ 49} The majority follows the United States Supreme Court's analysis in *Consol. Rail Corp. v. Gottshall* (1994), 512 U.S., 114 S.Ct. 2396, 129 L.Ed.2d 427, to reach the conclusion that Conrail is liable for negligent infliction of emotional distress. In *Gottshall*, Gottshall's supervisor made Gottshall's crew work without appropriate breaks in hot and humid conditions. Gottshall suffered emotional distress after the harsh conditions caused the death of his friend and the supervisor ordered the crew to continue to work within sight of the body. The case did not involve allegations that the supervisor acted with the intent of causing Gottshall, or any other employee, emotional distress. Instead, it seems that the supervisor ordered the crew to work without scheduled breaks and to continue to work after the death of Gottshall's friend for the simple reason that the track had to be repaired as quickly as possible. *Id.* at, 114 S.Ct. at 2400-2401, 129 L.Ed.2d at 435-436.

{¶ 50} The issue that the *Gottshall* court faced was whether a claim for negligent infliction of emotional distress is cognizable under the FELA. *Id.* at, 114 S.Ct. at 2403, 129 L.Ed.2d at 439. The court addressed this issue by considering whether a negligently inflicted emotional injury may constitute a compensable "injury" under the FELA. *Id.* at, 114 S.Ct. at 2408, 129 L.Ed.2d at 444. After noting that "'severe emotional injuries can be just as debilitating as physical injuries,'" the court found that a negligently inflicted emotional injury is a compensable injury under the FELA. *Id.*, quoting *Consol. Rail Corp. v. Gottshall* (C.A.3, 1993), 988 F.2d 355, 361. Of the three common-law tests for validly asserted claims of negligent infliction of emotional distress, the court adopted the "zone of danger" test, finding that it best reconciled the competing concerns of providing a realistic limit to liability and the remedial nature of the FELA. *Id.* at, 114 S.Ct. at 2410, 129 L.Ed.2d at 447.

**{¶ 51}** The case at hand, which involves an intentionally inflicted injury, is clearly distinguishable from *Gottshall*. The question presented in *Gottshall* was whether a negligently inflicted emotional injury is compensable under the FELA. The court specifically refused to answer the question of whether an intentionally inflicted emotional injury is compensable. *Id*. at, 114 S.Ct. at 2403, 129 L.Ed.2d at 439, fn. 2.

**{¶ 52}** In this case, the employees' conduct that caused Vance's emotional distress may only be characterized as intentional; through their acts they *intended* to harass Vance and cause him severe emotional distress. The intent to harass Vance is obvious from the behavior at issue, which included attacking Vance with a chipping hammer, attempting to run him over with a truck, taunting him about his sexual dysfunction, placing sugar in his wife's gas tank, scratching "Erie scab" on the side of his truck, and placing a dead, bloody rat in his lunch box. This type of conduct does not qualify as negligent infliction of emotional distress because the employees did not "unintentionally cause[] emotional distress to another." 2 Restatement of the Law 2d, Torts (1965), Section 313. Instead, this conduct is properly characterized as intentional infliction of emotional distress: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress ***." *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, syllabus; 1 Restatement of the Law 2d, Torts (1965), Section 46.

**{¶ 53}** Because Vance's injury is the result of intentional acts by coworkers acting outside the scope of their employment, Conrail cannot be liable for his emotional injury under the theory of *respondent superior*. See Annotation (1966), 8 A.L.R.3d 442. Although Conrail cannot be vicariously liable for Vance's injury, it may still be liable to the extent it was negligent in allowing its employees to intentionally harass Vance. This theory, which has a long history under the FELA, provides that an employer may be liable for injuries received by an employee as a

result of an intentional tort of a coemployee if the employer was negligent in hiring, supervising, or failing to fire the employee who caused the injury. See *Harrison v. Missouri Pacific RR. Co.* (1963), 372 U.S. 248, 83 S.Ct. 690, 9 L.Ed.2d 711; *Taylor v. Burlington N. RR. Co.* (C.A.9, 1986), 787 F.2d 1309; *Lancaster v. Norfolk & W. Ry. Co.* (C.A.7, 1985), 773 F.2d 807, 818, certiorari denied (1987), 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788; *Green v. River Terminal Ry. Co.* (C.A.6, 1985), 763 F.2d 805; Annotation (1966), 8 A.L.R.3d 442, 446. See, also, 2 Restatement of the Law 2d, Agency (1965), Section 219; 2 Restatement of the Law 2d, Torts (1965), Section 317.

{¶ 54} Before determining whether Conrail breached a duty it owed to Vance by failing to adequately supervise the employees who harassed him, it must first be determined whether an intentionally inflicted emotional injury is a compensable injury under the FELA. *Gottshall, supra*, 512 U.S. at, 114 S.Ct. at 2410-2411, 129 L.Ed.2d at 447-448.

{¶ 55} Significantly, the United States Court of Appeals for the Sixth Circuit has held that an intentionally inflicted, purely emotional injury is not compensable under the FELA. *Adkins v. Seaboard Sys. RR.* (1987), 821 F.2d 340. Specifically, the *Adkins* court held that a claim by an employee that he suffered emotional distress as a result of being threatened with discharge was not compensable. The court based its decision on three grounds. First, the court reasoned that the FELA has not been held to provide compensation for purely emotional injuries. *Id*. at 342. Second, the court reasoned that the FELA "has not been applied to any intentional torts lacking any physical dimension." *Id.* at 341. Third, the court reasoned that the FELA provides a remedy for negligently inflicted injuries and the plaintiff had not alleged that the railroad was negligent. *Id.*

{¶ 56} The broad pronouncement by the court in *Adkins* that an emotional injury caused by intentionally inflicted emotional distress is not cognizable under the FELA has become suspect in light of the United States Supreme Court's

decision in *Gottshall, supra*. Specifically, the *Gottshall* court expressly decided that purely emotional injuries are compensable under the FELA. And although the *Gottshall* court required some physical dimension to the injury, manifested in the "zone of danger" test, actual physical contact is now not a requirement for a claim to be cognizable under the FELA. Of course, the Sixth Circuit's decision remains correct as to the facts of *Adkins*, because the court in *Gottshall* declined to "take the radical step of reading FELA as compensating for stress arising in the ordinary course of employment." *Gottshall, supra*, 512 U.S. at, 114 S.Ct. at 2412, 129 L.Ed.2d at 449.

{¶ 57} Even though the *Gottshall* court decided that an emotional injury caused by negligent infliction of emotional distress is a compensable injury under the FELA, it did not decide whether an intentionally inflicted emotional injury may also be compensable. In order to decide this question, it is necessary to consider the nature of the cause of action in light of the history and policies of the FELA to ensure their compatibility. In reviewing the history of the tort of intentional infliction of emotional distress, it becomes evident that, like negligent infliction of emotional distress, this tort existed at the time the FELA was adopted in 1908. See Magruder, Mental and Emotional Disturbance in the Law of Torts (1936), 49 Harv. L.Rev. 1033, 1052; Prosser & Keeton, Law of Torts (5 Ed.1984) 60. As the tort has developed, several elements have surfaced as being necessary to a valid claim. First, the conduct which brings about the distress must be extreme and outrageous. Magruder, *supra,* at 1053; 1 Restatement of the Law 2d, Torts (1965), Section 46, Comment *d* ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Second, the plaintiff must have suffered severe emotional distress. Prosser, *supra*, at 63; 1 Restatement of the Law 2d, Torts (1965), Section 46, Comment *j* ("Complete emotional tranquility is seldom attainable in this world,

and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.").

{¶ 58} The court in *Atchison Topeka & Santa Fe Ry Co. v. Buell* (1987), 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563, noted that the common law of intentional infliction of emotional distress, like the common law of negligent infliction of emotional distress, is not uniform, and that jurisdictions have adopted different forms of the tort in three significant respects. *Id.* at 568-569, 107 S.Ct. at 1417, 94 L.Ed.2d at 575. Specifically, the court noted that some jurisdictions allow recovery for recklessly inflicted, as well as intentionally inflicted, emotional injuries, that some jurisdictions require physical manifestation of the emotional injury, and that some jurisdictions consider the relationship of the parties and place special emphasis on the workplace. *Id.* In noting these differences, the court in *Buell* seemed concerned with whether the more relaxed versions of this tort were consistent with the FELA's underlying policies. This was the concern raised by the court in *Gottshall* when it reviewed the tort of negligent infliction of emotional distress. Specifically, that court noted that the FELA is not a "workers' compensation statute," that railroads are not "the insurers of the emotional well-being and mental health of their employees," and that the FELA does not provide a remedy for "stress arising in the ordinary course of employment*." Gottshall, supra,* 512 U.S. at, 114 S.Ct. at 2404, 2409, 2412, 129 L.Ed.2d at 440, 446, 449. In other words, in order for an intentionally inflicted injury to be a compensable injury under the FELA, the scope of the compensable injury must be subject to reasonable limits.

{¶ 59} I believe that the traditional elements of the common-law tort of intentional infliction of emotional distress go a long way towards satisfying the court's concern of placing reasonable limits on the types of emotional injuries that are compensable. First, because this case involves intentionally inflicted emotional injuries, it is not necessary to determine whether recklessly inflicted emotional

22

injuries are compensable under the FELA. Second, the requirement that the emotional injury be severe significantly limits the potential class of plaintiffs. Third, the fact that the abusive behavior must qualify as "extreme or outrageous" or "unconscionable abuse" also limits the class of plaintiffs to those who have been subjected to only the most outrageous behavior. See *Buell, supra,* 408 U.S. at 567, 107 S.Ct. 1416, 94 L.Ed.2d at 574, fn. 13. Additionally, the context within which the abusive behavior occurs has an impact on whether particular behavior is sufficiently outrageous. Prosser, *supra*, supplement at 18. "The salon of Madame Pompadour is not to be likened to the rough-and-tumble atmosphere of the American oil refinery." *Eddy v. Brown* (Okla. 1986), 715 P.2d 74, 77. Given that a railroad yard can present a similar rough-and-tumble atmosphere, acts of harassment in that context must be particularly egregious to qualify as unconscionable abuse. Fourth, even though actual physical manifestation of the distress is not required, *Gottshall, supra*; *Taylor supra*, 787 F.2d 1309; *Yeager, supra*, 6 Ohio St.3d at 374, 6 OBR at 425, 453 N.E.2d at 671; Magruder, *supra*, 49 Harv. L.Rev. at 1058, where physical manifestation of an emotional injury is not present, courts require a greater showing that the conduct is extreme and outrageous. Prosser, *supra*, at 64.

{¶ 60} However, in order to ensure that only those intentionally inflicted emotional injuries that are consistent with the FELA will be compensated, I believe it is necessary to supplement the common-law elements of the tort of intentional infliction of emotional distress. Specifically, given the FELA's focus on physical perils, see *Lancsater, supra*, 773 F.2d at 813, and the *Gottshall* court's determination that the FELA does not provide compensation for "stress arising in the ordinary course of employment," *Gottshall, supra,* 512 U.S. at, 114 S.Ct. at 2412, 129 L.Ed.2d at 449, I believe a plaintiff seeking recovery under the FELA for an emotional injury caused as a result of intentional infliction of emotional distress must show that the injury was caused, at least in part, by physically

menacing behavior. See *Gottshall, supra*, 512 U.S. at, 114 S.Ct. at 2412, 129 L.Ed.2d at 449. Given the addition of the above element, I believe it is clear that an intentionally inflicted, severe emotional injury which was caused, at least in part, by physically menacing behavior constituting unconscionable abuse qualifies as a compensable injury under the FELA.

{¶ 61} The next question is the scope of an employer's duty to prevent its employees from intentionally inflicting emotional distress upon other employees. The court in *Buell* noted that under the FELA an employer has a duty to use reasonable care in furnishing its employees with a safe place to work. *Buell, supra*, 408 U.S. at 558, 107 S.Ct. at 1412, 94 L.Ed.2d at 568. That duty includes the obligation to take reasonable precautions to prevent severe emotional abuse of one employee by other employees. *Halko v. New Jersey Transit Rail Operations, Inc.* (S.D.N.Y. 1987), 677 F.Supp. 135. "[A] railroad is guilty of negligence if it fails to prevent reasonably foreseeable danger to an employee from intentional or criminal misconduct." *Green, supra*, 763 F.2d at 808, quoting *Brooks v. Washington Terminal Co.* (C.A.D.C. 1979), 593 F.2d 1285, 1288, certiorari denied (1979), 442 U.S. 910, 99 S.Ct. 2823, 61 L.Ed.2d 275. Reasonable foreseeability of the harm is an "essential ingredient" of an employer's liability under the FELA. *Gallick v. Baltimore & O. RR. Co.* (1963), 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618. "[T]he fact that 'the foreseeable danger was from intentional or criminal misconduct is irrelevant; respondent nonetheless had a duty to make reasonable provision against it.'" *Harrison, supra*, 372 U.S. at 249, 83 S.Ct. at 690-691, 9 L.Ed.2d at 713, qouting *Lillie v. Thompson* (1947), 332 U.S. 459, 462, 68 S.Ct. 140, 142, 92 L.Ed. 73, 75. In that vein, a railroad will not be liable for the intentional harassment of one employee by another employee unless it knew or had reason to know of the offending employees' vicious propensities or that the work area is conducive to an unreasonable risk of unconscionable abuse. See Green, supra, 763 F.2d at 808-809; *Persley v. Natl. RR. Passenger Corp.* (D.Md., 1993), 831 F.Supp.

464, 468-469. With respect to the types of intentionally inflicted injuries that are foreseeable, it seems clear that an employer may be liable for only those injuries which the employer could have potentially prevented. In other words, where an employee acts outside the scope of his employment, an employer can be liable only if the offending conduct occurs on the employer's premises and the employer knew or had reason to know that it could control the employee's conduct and knew or had reason to know of the necessity and opportunity to exercise that control, and failed to do so. See 2 Restatement of Law 2d, Torts (1965) 125, Section 317.

{¶ 62} Vance presented sufficient evidence from which a jury could find that Conrail's employees intentionally caused him severe emotional distress through physically menacing behavior. The jury was properly instructed that a finding of "unconscionable abuse," as set forth in *Buell, supra*, 480 U.S. at 567, 107 S.Ct. at 1416, 94 L.Ed.2d at 574, fn. 13, was a prerequisite to Vance's being able to recover. The types of harassment to which he was subjected were sufficient for a jury to find that they constituted "unconscionable abuse," and it is obvious that a significant portion of the harassment, specifically the attack with the chipping hammer and the attempted hit and run with the truck, was physically menacing in nature. Vance also presented sufficient evidence from which the jury could find that his emotional injury was of such severity as to justify recovery even though there were no physical manifestations of his injury. As a result, Vance met the burden of proof required to show that his emotional injury is a compensable injury under the FELA.

{¶ 63} Vance also met his burden of proving that Conrail failed in its duty to provide him with a safe workplace. The jury was instructed that Conrail had a duty to use ordinary care to protect its employees from foreseeable danger. The jury was also instructed that in order for Vance to recover, the jury had to find that Conrail was negligent in allowing the emotional abuse to occur. The court instructed the jury that, in order to find Conrail liable, they had to find that Vance's

injuries were reasonably foreseeable. Vance presented sufficient evidence from which the jury could find that Conrail knew of the generally abusive environment in the railyard between the former employees and the particular abuse he was receiving to support a determination that Conrail knew or should have known that the work area was conducive to an unreasonable risk of unconscionable abuse. Additionally, Vance presented sufficient evidence to support a finding that Conrail's failure to properly supervise its employees was a cause of his injuries. As a result, Vance presented sufficient evidence to support a finding that Conrail was liable for his emotional injury because it failed to adequately supervise the offending employees.

{¶ 64} Thus, I agree with the majority's reversal of this matter but reject in part its reasoning.

———————————

**COOK, J., dissenting.**

{¶ 65} I respectfully dissent. In my view, Vance did not prove he should recover for his emotional injury under FELA as such claims have been delimited by the United States Supreme Court in *Consol. Rail Corp. v. Gottshall* (1994), 512 U.S., 114 S.Ct. 2396, 129 L.Ed.2d 427. Recovery for negligently inflicted, purely emotional injuries, according to *Gottshall*, is limited to "zone of danger" situations. Vance's claim, premised on a hostile work environment produced by sporadic, intentional incidents of harassment by various co-workers, is not cognizable for negligent infliction of emotional distress.

I

{¶ 66} Because recognition of a cause of action for negligent infliction of emotional distress holds out the very real possibility of nearly infinite and unpredictable liability for defendants, courts have placed substantial limitations on the class of plaintiffs that may recover for emotional injuries and on the injuries that may be compensable. *Id.* at, 114 S.Ct at 2405, 129 L.Ed.2d at 442. The court held in *Gottshall* that negligent infliction of emotion distress is cognizable under FELA, meaning that, as a part of its "'duty to use reasonable care in furnishing its employees with a safe place to work,' * * * a railroad has a duty under FELA to avoid subjecting its workers to negligently inflicted emotional injury." (citation omitted.) *Id.* at, 114 S.Ct. at 2408, 129 L.Ed.2d at 444. The court cautioned that the duty, however, is not self-defining. *Id.* "[T]he common-law background of this right of recovery must play a vital role in giving content to the scope of an employer's duty under FELA to avoid inflicting emotional injury." *Id.* at, 114 S.Ct at 2408, 129 L.Ed.2d at 445.

{¶ 67} Referring then to the common law of the states on the subject, the court noted that "[n]o jurisdiction, however, allows recovery for *all* emotional harms, no matter how intangible or trivial, that might be causally linked to the negligence of another. Indeed, significant limitations, taking the form of 'tests' or 'rules,' are placed by the common law on the right to recover for negligently inflicted emotional distress, and have been since the right was first recognized late in the last century." *Id.* at, 114 S.Ct at 2405, 129 L.Ed. 2d at 441.

{¶ 68} Having considered the various "tests" and "rules" used in the common law to define the class of plaintiffs who may recover for negligent infliction of emotion distress, the court adopted the "zone of danger" limiting test, which holds that "'those within the zone of danger of physical impact can recover for fright and those outside of it cannot.'" *Id.* at, 114 S.Ct. at 2406, 129 L.Ed.2d 443, quoting Pearson, Liability to Bystanders for Negligently Inflicted Emotional

Harm - A Comment on the Nature of Arbitrary Rules (1982), 34 U.Fla.L.Rev. 477, 489. "The zone of danger test also is consistent with FELA's central focus on physical perils." *Id.* at, 114 S.Ct. at 2410, 129 L.Ed.2d 447. The court wrote that the "zone of danger" test is "based on the realization that 'a near miss may be as frightening as a direct hit.'" *Id.* at, 114 S.Ct. at 2406, 129 L.Ed.2d at 443, quoting Pearson at 488. The "zone of danger" test "limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct," in situations involving a frightening, accidental near miss. *Id*. Thus, the Court concluded that the "zone of danger" test is "a well-established 'common-law concep[t] of negligence,' that is suitable to inform our determination of the federal question of what constitutes negligence for purposes of FELA."[3] (citations omitted.) *Id.* at, 114 S.Ct. at 2410, 129 L.Ed.2d at 447.

{¶ 69} With this as the relevant legal framework, the facts and allegations proven by Vance did not support a case for negligent infliction of emotional distress. As perceived by the majority, Vance demonstrated that he was subjected to a "hostile workplace environment" at work. This is not within the narrow limits of a "zone of danger" test, *i.e.,* fright caused by imminent physical peril. The incidents such as the rat in the lunch box, the scratched car, the taunting about sexual matters, the sugar in the gas tank, or the failure to provide safety equipment were bundled by the majority as if each meets the "zone of danger" test.

{¶ 70} The two incidents involving threats of physical peril, the chipping hammer incident and the co-worker trying to run down Vance with a vehicle in the yard, are intentional acts and thus do not fit the *Gottshall* constraints. The railroad

---

3. In *Heiner v Moretuzzo* (1995), 73 Ohio St.3d, N.E.2d, decided today, we held that in order to recover for negligent infliction of emotional distress in Ohio, a plaintiff has to have suffered the emotional injury from witnessing or experiencing a dangerous accident or have had an appreciation of actual physical peril.

had a duty to avoid subjecting Vance to *negligently* inflicted emotional injury as defined by the "zone of danger" test. Vance, of course, did not allege nor did he wish to try to prove that the employer intentionally inflicted emotional distress.

{¶ 71} Both the majority and concurring opinions consider the applicability of a theory of negligent supervision to this case. In my view, that theory fails for two reasons. First, such claims may be brought under FELA for intentional acts of a co-employee only where there is a physical injury, not a purely emotional injury. Limitation of the purely emotional claims to "zone of danger" scenarios is the upshot of the *Gottshall* decision. Second, even if one could recover for purely emotional injuries under a negligent supervision theory, Vance did not present evidence that either the chipping hammer incident or the attempted rundown was committed by an employee who had previously demonstrated such behavior, thereby triggering the employer's duty to discipline or discharge such employee. To the contrary, the majority opinion casts a duty on railroads to regulate conduct of the general employee population rather than limiting the duty to an offending individual employee. Of critical importance, in most of the incidents, no culprit was even identified. Rather, it is only by evidence of a "pervasive" attitude in the company that the majority holds the employer to the nebulous duty "to deal with the problems" in Vance's work environment.

II

{¶ 72} I also differ with the majority's employing the "unconscionable abuse" test from *Adams v. CSX Transp., Inc.* (C.A.6, 1990), 899 F.2d 536, decided before Gottshall. Because Gottshall limits claims of negligent infliction of emotional distress to the class of plaintiffs meeting the "zone of danger" test, the *Adams* "unconscionable abuse" test is no longer applicable.

Conclusion

{¶ 73} The majority decision merits the same criticism the Supreme Court leveled at the Third Circuit's decision it reviewed in *Gottshall, i.e.*, that the "ruling

would tend to make railroads the insurers of the emotional well-being and mental health of their employees." 512 U.S. at, 114 S.Ct. at 2409, 129 L.Ed.2d at 446. Because the majority violates the boundary imposed by *Gottshall* on FELA claims for purely emotional injury, I dissent and would affirm the judgment of the court of appeals.

———————————